NATIONAL WATERWORKS CO. **v.** KANSAS CITY.

KANSAS CITY **v.** NATIONAL WATERWORKS CO.

(Circuit Court of Appeals, Eighth Circuit.   July 2, 1894.)

Nos. 469, 470.

1. MUNICIPAL CORPORATIONS—CONTRACTS—MANDATORY STATUTE—PURCHASE OF WORKS OF WATER COMPANY.

An act empowering a city to grant by ordinance the right to erect and operate waterworks for the use of the city, for a period of 20 years, and to renew the grant for another such term, reserving the right to acquire the works (Act Mo. March 24, 1873), provided that at the expiration of the 20 years, if the grant should not be renewed, the city should purchase the works, and, if the price could not be fixed by agreement, pay therefor the fair and equitable value. The ordinance passed by the city pursuant to the act, and in effect the contract under which the works were erected by a water company, provided that on a failure to renew the grant at the expiration of 20 years the city should then be required to purchase the works. *Held*, that the provision for purchase was mandatory, vital, and controlling, and, on the expiration of the 20 years without renewal of the grant, pending a suit by the company against the city for performance of the contract, compelled a decree therein that the company should sell and the city buy.

2. SAME—SPECIFIC PERFORMANCE — DECREE RESPONSIVE TO ALLEGATIONS AND PRAYER.

The bill in such suit, filed by the company nearly 2 years before expiration of the 20 years, alleged performance on the part of the company of the terms of the contract, and a threatened violation of its obligations on the part of the city, and prayed a decree that the contract was binding on both parties, and that the city should perform it, so far as executory and unperformed. *Held*, that after the obligation of the city to purchase had arisen, on the expiration of the 20 years, this was sufficient foundation to decree completion of the sale and purchase, although the cross bill of the city, and amendments thereto, were inharmonious, and, if the only affirmative pleadings, might not have sustained such a decree, and although the

company preferred not to sell, but to continue the franchise, it being then too late for the company to oppose such decree as not responsive to the pleadings.

3. SAME—INCAPACITY TO TAKE TITLE.
    The company could not object to such decree that the city, by amendments to its charter and acts of the legislature subsequent to the contract, had become disabled to take title to all the property making up the waterworks system, as, if the company was paid the fair and equitable value of its property, its rights would cease.

4. SAME—TITLE TO PROPERTY ON EXPIRATION OF FRANCHISE.
    The act authorizing such grant by the city provided that no grant so made should confer the right to operate the waterworks for any period beyond 20 years, but that it might be renewed for another term. *Held* that, on the expiration of the 20 years without renewal of the grant, the title to the property and the right of possession did not pass to the city without payment, or tender of payment, therefor.

5. SAME—VALUE OF PROPERTY AFTER EXPIRATION OF FRANCHISE.
    The "fair and equitable value" of the works, to be paid therefor by the city under such act, should not be determined by capitalization of the earnings,—thereby, in effect, valuing the franchise, which no longer existed,—nor should such value be limited to the cost of reproducing the plant, but allowance should be made for the additional value created by the fact of connections with and supply of buildings, although the company did not own the connections.

6. SAME—DAMAGES FOR DEFECTS IN CONSTRUCTION OF WORKS—ESTOPPEL.
    The city's cross bill claimed damages on the ground that the waterworks system did not meet the requirements of the contract, in efficiency and completeness. *Held*, that the city, having for many years recognized and accepted the system as constructed in full compliance with the contract, could not maintain this claim.

Appeal from the Circuit Court of the United States for the Western District of Missouri.

This was a suit by the National Waterworks Company of New York against Kansas City, Mo., to enforce a contract for the construction and operation of waterworks for that city. The circuit court rendered a decree for performance of the contract. Both parties appealed.

The contract sought to be enforced was created under an ordinance of the defendant city passed pursuant to provisions of an act of the general assembly of Missouri approved March 24, 1873 (Laws Mo. 1873, p. 286, §§ 1, 22), as follows:

"Section 1. The city of Kansas is hereby empowered to construct water works, to take and convey into and throughout the city, for the use of the same and others therein, water of the Missouri river, Blue river or Kaw river, or all, from any point or points, and to that end to acquire, hold, use, control and dispose of real estate and personal property within and without the corporate limits of the city, and also in the state of Kansas, necessary for laying pipes, constructing reservoirs, aqueducts, appliances and means, and erecting buildings and machinery proper and convenient for such water works, and for operating and repairing the same; to receive, take, purify, store, conduct and distribute in and throughout the city such water, and in general to do all things necessary and proper to carry this act into effect and accomplish the object thereof."

"Sec. 22. The city of Kansas is hereby empowered to grant to any person or persons, or any corporation, the right to erect and operate such water works as the first section of this act provides for, and to accomplish the purpose therein mentioned on such terms and conditions as may be agreed on in a contract therefor: provided, that such grant shall only be made by or in all respects pursuant to ordinance, which shall not be valid till the same be

approved by two-thirds of the qualified electors of the city voting on the matter at a general election, or special election ordered and held for the purpose, when the matter of the approval of such ordinance shall be submitted to such electors; the power to order, hold and declare the result of any election requisite being hereby conferred on the city, to be exercised by or pursuant to ordinance; and, provided further, that no grant so made shall confer the right to operate the water works for any period beyond twenty years from the time of approval of the ordinance as aforesaid; but the grant may be renewed by or pursuant to ordinance, approved as aforesaid, during the last of such twenty years, for another term not exceeding twenty years, on terms and conditions specified in the ordinance for the renewal of the grant; and, provided further, that in making such grant or renewing the same, the city shall reserve to itself the right, at its option, and at any time, to acquire and become sole owner of such water works, including all extensions and enlargements thereof, and everything of every nature and description belonging and pertaining thereto, on such terms as may be provided and agreed on between the parties at the time the grant is made; or if no right is expressly reserved, or the city cannot, according to any reservation, purchase and become sole owner as aforesaid, then the city may, at any time, at its option, acquire and become sole owner of such water works, including all enlargements and extensions thereof, and everything of every nature and description belonging or pertaining thereto, on paying therefor the fair and equitable value thereof, to be ascertained, if the parties cannot agree thereon, by the circuit court of said county, on the petition of the city; the property and subject of purchase to be transferred and belong to the city on payment therefor; and, provided further, that at the expiration of the twenty years, if the grant be not renewed, the city shall purchase and become sole owner of such water works as aforesaid, and pay therefor a price agreed upon by the parties or ascertained as they may agree, or, if the price cannot be thus fixed, then the city shall pay the fair and equitable value of the whole works, to be ascertained by said court on the petition of either party filed for the purpose; and, provided further, that the city may furnish any party to whom such grant may be made real estate and right of way for use in constructing and operating such water works, according to such agreements as may be made in the premises, and guarantee that the works shall earn a certain amount annually, to be specified in the grant, and guarantee, clear, over and above current expenses, taxes and assessments; and may secure by a proper deed or agreement for the purpose, to the party to whom such grant is made, the control and possession of any real estate and right of any [way] condemned or acquired in the exercise of the right of eminent domain, for use during the time such party may need the same under any such grant."

Under authority granted by this law, the city, by an ordinance approved October 27, 1873, and ratified by a vote of the people on November 15, 1873, and taking effect on the latter date, granted to the National Waterworks Company a right to erect and operate waterworks. The ordinance contained the following provisions:

"Section 1. That the National Water Works Company of New York, a corporation duly organized under the laws of the state of New York, be and it is hereby authorized, subject to the limitations hereinafter or by law provided, to establish, construct, maintain and operate water works, in or adjacent to the city of Kansas, in the state of Missouri, to receive, take, purify, store, conduct, and distribute in and throughout the said city of Kansas, pure, well-settled, and wholesome water; to lay down pipes and extend aqueducts and conductors through the streets, avenues, lanes, alleys or public grounds of the said city of Kansas; to erect and maintain all necessary buildings, machinery and attachments, of any description, necessary and proper and suitable for such works, and to supply to said city and the inhabitants thereof such water by said water works. * * * The rights hereby granted to continue for twenty years from the date of the approval of this ordinance by a vote of the qualified voters of the city of Kansas. * * *

"Sec. 4. The city of Kansas hereby reserves to itself the right at its option,

and at any time, to acquire and become sole owner of said water works, including all extensions and enlargements thereof and everything of every nature and description belonging and pertaining thereto, on paying therefor the fair and equitable value thereof, to be ascertained, if the parties cannot agree thereon, by the circuit court, or other court of record of the county of Jackson, at Kansas City, upon the petition of the city, and in such manner as the court may determine; provided, that a copy of such petition shall be served upon said company, at least fifteen days before the same shall be presented to said court. If, at the expiration of twenty years from the time this grant shall take effect the same shall not have been renewed, or the city shall not have become owner of said works, the city shall then be required to purchase and become sole owner of said water works as aforesaid, and pay therefor a price agreed upon by the parties, or ascertained as they may agree; or, if the price cannot be thus agreed upon, then the city shall pay the fair and equitable value of the whole works, to be ascertained by said circuit or other court of record as aforesaid, in such manner as said court shall determine on the petition of either party for the purpose; provided, that the party presenting such petition shall have served a copy thereof upon the other party, at least fifteen days before the day of presentation; and, provided also, that if upon examination it be found that such works are not in all respects in good condition, and of first-class and sound materials, and in every way efficient, then the city shall not be required to purchase the same at any time nor at any price."

The company's bill, filed December 26, 1891, recited said act and ordinance, and alleged that under the contract thereby created the company completed the works for operation as required, and that they were duly accepted by the city; that the city adopted another ordinance in February, 1877, whereby certain litigation between it and the company was settled, and certain changes were made in the original ordinance; that on the 25th day of May, 1878, the city, by a certificate signed by its mayor and the president of the common council, did certify that said company was operating its works to the satisfaction of the city; that the city adopted another ordinance in August, 1881, whereby the contract was further changed; that the company had kept and performed all the conditions, covenants, premises, and agreements on its part, and that it would at all times be ready, able, and willing to do so; that the company had expended large sums of money in building the works; and that in order to do so it has issued its bonds in the aggregate of $3,000,000, secured by mortgages covering the waterworks plant; that the defendant city, disregarding its duty and obligations to the company under the ordinances aforesaid, and contrary to equity and good conscience, and with the intent and purpose to wreck the company's said waterworks in said city, to destroy the value thereof, and to render valueless to the bondholders of said bonds the security therefor mentioned in the mortgages referred to, and to impair the obligations of said city under said several contracts so entered into by it as aforesaid, and that with this intent and purpose, the said city falsely pretended that the ordinances aforesaid and the contract embodied therein, were not in force, and were no longer binding and obligatory upon said defendant, and particularly that said defendant was not and would not be bound either to purchase said waterworks, as by said ordinance was provided and agreed, or to renew the company's said grant; that the mayor and common council, law officers, and legal advisers of the city had publicly declared and represented that said ordinances and contract were not binding and obligatory upon the city, and had threatened and did threaten and intend to repudiate the same, and refuse to keep and perform the covenants, agreements, and promises therein contained and expressed to be kept and performed on the part of the city with respect to the renewal of said contract, and the purchase of and payment for said waterworks; that in furtherance of said unlawful intent, purpose, and threats, the city had adopted certain charter amendments, and had passed ordinances providing for constructing and operating waterworks in the city, and for issuing bonds for the purpose, and authorizing plans, specifications, and details for the work to be prepared, and had publicly advertised for sealed bids for the purchase of said bonds. The bill prayed a decree "that the several ordinances accepted

by your orator, hereinbefore set forth, as they are taken together, are in full force and effect, and that the contract embodied therein is a valid and subsisting contract, binding and obligatory upon your orator and the defendant, and that the defendant keep and abide by the same; and that, upon your orator's duly and faithfully doing and performing all things yet remaining to be done upon its part, the defendant, its officers and agents, keep and perform the covenants, promises, and agreements on its part, so far as they are executory and unperformed; and that your orator may have such other and further relief as the case may require, and as may be conformable to equity, and to your honors may seem meet, and the defendant, its mayor, common council, officers, and agents, may be perpetually enjoined and restrained by the decree of this court from proceeding to construct and maintain said separate and distinct system of waterworks, and from taking or appropriating to its own use, except under and in pursuance of its contract with your orator, any portion of your orator's said system of waterworks; and that your orator may have such other and further relief as the equity of the case may require, and as to the court may seem meet."

The answer of the city, filed December 6, 1892, admitted the act of the general assembly and the ordinances referred to, the construction and operation of the waterworks by the company, and the fact, as alleged, that the city had availed itself of the rights and privileges stipulated for under the contract, so far as the company had been able to furnish them, but denied that the company had complied with its contract by making a complete and sufficient system of waterworks for the city, as provided for in the ordinance. The answer set up the provision of the contract which required the company, during the year 1874, to construct such a complete and efficient system, and to have and to hold the same, at all times during the period of the franchise, subject to the option and right of the city to purchase and become the sole owner of the works, in the manner therein provided; and alleged a breach on the part of the company of that provision, in that in many respects the company had failed to construct and have the kind of waterworks required by the contract, or to have any complete system of waterworks, specifying various particulars in which the company's system was alleged to be inefficient and incomplete; alleged that by reason of such failure on the company's part the city was relieved from any obligation to purchase the company's system, or any part thereof; and admitted the purpose and intent of the city, in the immediate future, to acquire the ownership and control of a system of waterworks of its own. The company filed a reply specially denying all the substantial allegations of the answer, and alleging the company's readiness and willingness, when required, to convey its complete system of works to the city. The city, also, at the time of filing its answer, December 6, 1892, filed a cross bill which set up the various breaches of the contract on the part of the company alleged in the answer, and alleged that the city had been and was by those breaches released from all obligations to the company; that the company, by its proceeding in this case, and by many other means and practices, was preventing the city from exercising its unquestioned right to provide itself with a new system of waterworks; and that the company had threatened, and was then threatening, to cut off the water supply from the city and its inhabitants, as an illegitimate means of forcing the city to comply with its demands, and to desist from its purpose of building its own waterworks,—and accordingly prayed a decree the opposite of that prayed for by the company, declaring the city released and absolved from all obligations under the contract to purchase its system of waterworks, or any part thereof, and enjoining and restraining the company from interfering in any way with the city's proceedings to sell its bonds and construct its own waterworks, and also for the payment of damages on account of the failure of the company to furnish the degree of fire pressure stipulated for in the contract, which had been paid for for years at the contract rates, and further restraining the company from carrying out its threat of cutting off the water supply pending the suit, and also that a receiver be appointed for the company.

The answer of the company to this cross bill, filed February 28, 1892, contained, in addition to some of the matters stated in its original bill, the same

denials and allegations contained in its reply to the answer, and asserted its complete and perfect ownership of its plant, and its ability to convey and deliver the same to the city whenever required, and its readiness to do so on the 15th day of November, 1893, "when the obligation of said city to purchase shall become absolute."

To this answer the city filed a replication.

After the expiration of the franchise, on the 15th day of November, 1893, the city, on the 29th day of November, 1893, filed a supplemental cross bill setting up the expiration of the contract on the preceding 15th day of November; that the city had not renewed its grant to the company; that no terms of agreement could be entered into between the city and the company with reference to the matter; and that the company had failed to have such works as the city was bound to purchase. It alleged that since November 15, 1893, the time of the expiration of said grant, the company had had no interest in or title to that portion of the plant within the limits of the city, and was wrongfully claiming to own the same, and to use the water mains, pipes, and works for the purpose of furnishing water to private consumers in the city, and had already acted and coerced private consumers into paying water rentals in advance up to the 1st day of April, 1894, and had succeeded in collecting from such private customers an amount of money equal to at least $200,000; that the collection of such rental was to cover the use of water after the expiration of the franchise aforesaid, and that the company proposed to continue in the future to make such exactions from such private consumers without making any allowance to the city for the use of its streets and property; that the city was desirous of having its rights in the premises ascertained and determined; that, if the company had any interest in the pipes and works within the city, the city desired to have such interest ascertained and determined and adjudicated by the court, and that the city be permitted to acquire that interest by the exercise of the right of eminent domain. It further alleged that under the contract the necessary real estate and rights of way for the erection of the works was purchased and had been paid for by the city, but that the company was wrongfully withholding the title to the same from the city, and keeping it in itself, subject to its mortgages; that the city had been largely damaged by the want of the fire pressure guarantied by the contract,—and asked that those damages might be ascertained and determined. It further alleged great damages by reason of the failure of the company to construct and have for its use, at the termination of the franchise, a complete system of waterworks, and asked damages in that respect. It also alleged the threat of the company to cut off the supply of water to the city for public purposes, and the great danger that would arise in case this threat should be executed, and offered to pay, if required, a reasonable sum for water furnished for public purposes. It therefore prayed a decree declaring that the company's right and title to the works, within the limits of the city, had expired, and that the same belong to the city; that the court ascertain and determine the interest of the company in the works described by the pleadings, and that the city be permitted to obtain the same upon making just compensation, to be determined by the court in such manner as the court may provide; that the company be required to convey the real estate standing in its name to the city; that the damages which the city had suffered by reason of the failure of the company to furnish the required fire pressure in the past be determined and adjudged in favor of the city; that the sum, if anything, which the city ought to pay to the company for furnishing water for public use, pending the litigation, be determined; that the company be enjoined from cutting off the supply of water to the city for public purposes; that, if necessary, a receiver be appointed to take and operate the works.

The answer of the company to the supplemental cross bill set up:

"That the said city is without authority or power to purchase said system of waterworks for the following reasons and because of the following facts, to-wit:

"(a) The constitution of the state of Missouri, of 1875, withdrew from said city the power to become indebted to an amount sufficiently large to purchase said system of waterworks, and said city has no means to apply to

such purpose, and could only accomplish the same by becoming indebted to an amount which would make its indebtedness exceed the limitations in said constitution contained, and the annual interest on such indebtedness larger than could be paid out of the taxes authorized to be levied for that purpose.

"(b) By section 17 of article 13 of the charter of said city, adopted in 1889, it is expressly provided, referring to the contract with this defendant embodied in said Ordinances Nos. 10,524 and 14,776, that 'the city can purchase such works, or renew the franchise thereof only by ordinance passed by a majority vote of the members elect of each house of the common council; and only then in the event that said ordinance shall be approved by a vote of two-thirds of the qualified voters of the city voting at an election held for such purpose.' And the defendant states that no such ordinance has been passed, nor has any election been held, as provided in said charter.

"(c) Under Ordinance No. 2,263 of said city, approved August 21, 1890, an amendment to the charter of said city was adopted, the same being mentioned in the seventeenth paragraph of the original bill of complaint, and a copy thereof annexed to said bill as Schedule E; and in and by such amendment the said city expressly, and for the precise purpose of disabling itself from carrying out its contractual obligations to this defendant, limited its power to hold property for waterworks purposes to such property as might be located in the state of Missouri.

"(d) Questions having been made as to the validity of said charter amendments, the complainant caused the general assembly of the state of Missouri to enact 'An act concerning waterworks, and a supply of water for cities now having or that may hereafter have a population of more than one hundred thousand (100,000) and less than three hundred thousand (300,000) inhabitants, whether organized under general law or special charters, or under section sixteen (16) of article nine (9) of the constitution of this state, and to issue bonds for acquiring waterworks, and to make contracts for supplying water to such cities, approved March 6, 1893, which is in substance the same, and contains the same limitations and restrictions upon the powers of the complainant as it imposed upon itself by its charter amendment, namely, to acquire only such property as is situated within the state of Missouri. The complainant is the only city to which said act has or can have application, and the same was caused to be enacted by said complainant for the same purpose which moved the adoption of said charter amendments, as hereinbefore stated.

"(e) Under section four of said Contract Ordinance No. 10,524, the said city could only become the owner of said system of waterworks by exercising its option to purchase the same on or before November 15, 1893; and the said city, until long after that date, adhered to the election made and purposes expressed in its original cross bill herein. And the defendant shows that under the charter of said city the authority to act for said complainant in the premises is vested in its common council by the passage of a proper ordinance; that no action whatever has been taken by such body, or by an officer or person authorized to act for said city, relative to the matter; and that the only step taken in the premises has been through the solicitors in this cause, upon their own motion, by the filing of the so-called 'Supplementary Cross Bill' herein.

"(f) For more than four years prior to the filing of the said supplementary cross bill, the city has claimed and contended that it was absolved and released from the contract with this defendant, and that it did not propose to, and would not, purchase the defendant's system of waterworks, or any part thereof, although said company has always denied, and does still deny, said claim.

"By reason of which facts this defendant avers that said city is disabled, debarred, and prohibited from purchasing its said system of waterworks, and that said city waived any and all right to do so."

The answer also contained allegations as to the title to the property constituting the company's system, and the company's ability to convey, and denied the allegations of the supplemental cross bill as to insufficiency of the company's system, and damages to the city therefrom.

On the hearing of the cause, on March 22, 1894, the city filed an amendment to its supplementary cross bill, as follows:

"If, as defendant in its various pleadings avers, it now has such a system of waterworks as by the act of March 24, 1873, and Ordinance 10,524, provided for, then your orator is ready and willing, and now offers, to pay for same a fair and equitable value thereof. Your orator has at all times performed all the duties and obligations on its part, and is ready and willing to abide by and perform all obligations still remaining, if any, including the payment of any money that ought to be paid by virtue of said law and ordinance; but it respectfully shows that, if the court should decree that the contract be specifically enforced, such decree ought to be accompanied with conditions requiring the company to furnish a complete, efficient, and unincumbered supply and distribution system, and requiring the company, until possession is obtained by your orator, to furnish water free of charge, and to account and pay over to your orator all income received since November 15, 1893. Your orator therefore asks the court to ascertain and determine the rights of the parties under and by virtue of the said law and ordinance, and as they existed on and after November 15, 1893, and, when so ascertained and determined, to enforce the same by a proper decree in the premises."

The answer of the company to this amendment was as follows:

"Answering the amendment made to the supplementary cross bill on March 22, 1894, and numbered paragraph 12 thereof, the defendant says that it is not true that the said Kansas City has at all times, or at any time, performed its duties or obligations in the premises, or that it can or will do so in the future. A distinct breach of duty is the wrongful refusal to pay to this defendant money earned by it under the contract, and adjudged to it by this court. The defendant adopts its answer heretofore filed to the supplementary cross bill as an answer to said amended pleading, and prays as in said answer it has already prayed."

After the testimony in the case was taken, the court appointed two commissioners to make personal inspection of the system of waterworks, and to estimate and fix the value of the works and system as a whole, to be predicated on the actual value of the works, and not upon the stock of the company, and to be the fair and equitable value of the whole works at the time; to estimate and fix, also, in like manner, the proportionate value of that part of the system lying in the state of Missouri; and to inquire and report on other matters. Upon the pleadings, the evidence in the case, and the report of the commissioners, the cause came on for hearing on March 23, 1894, and on April 20, 1894, a decree was rendered, by which it was ordered, adjudged, and decreed as follows:

"First. That under the act of the legislature and the contract between the National Waterworks Company of New York and the city of Kansas City, set out in the pleadings in this case, the said city is legally bound to purchase from said company, and said company is legally bound to sell to the said city, the full, complete, and entire waterworks plant by which the said city and its inhabitants are now supplied with water, including all portions of said plant, as well that portion in the state of Kansas, and commonly known as the 'Quindaro Supply Works and Flow Pipe' as that portion situated in the state of Missouri, together with all lots and lands belonging to or in any wise used as part of said plant, with the exceptions mentioned in the eleventh paragraph of this decree, and everything of every nature belonging or pertaining to said waterworks plant.

"Second. That said city, under the said contract, is bound to pay for said complete or whole waterworks plant, and the said company is bound to receive in full payment therefor 'the fair and equitable value of the whole works,' as provided in said contract.

"Third. The court finds that the fair and equitable value of the said complete and whole waterworks plant is two million seven hundred and fourteen thousand dollars ($2,714,000).

"Fourth. That said city is entitled to the possession, use, and control of said whole and complete waterworks plant, and said company shall, on the 30th day of April, 1894, surrender and deliver to the said city the said whole and complete waterworks plant, and everything pertaining thereto, and all rights, leases, or contracts relating thereto, and necessary or essential to the full enjoyment of said waterworks as they are now enjoyed and operated by the said company; and the said company is hereby enjoined from using or operat-

ing said works, or retaining possession or control of any part thereof, after the said 30th day of April, 1894, and is enjoined from refusing or denying to said city the complete and peaceable possession of said works on that day; and said city is enjoined from refusing or neglecting to demand and accept the possession of said works on that day, and no appeal of this cause by either or both of the parties thereto shall operate to suspend these injunctions.

"Fifth. In the event that said company is unable to deliver the possession of the whole and complete waterworks plant, including the Quindaro Supply Works, then said company shall deliver and the city shall receive on or before said 30th day of April, 1894, that part of the plant in the state of Missouri; and said company is hereby enjoined from interfering with the possession of said city to that part of said works situated in the state of Missouri; and this injunction shall remain in force pending any appeal in this case.

"Sixth. The said company, within six months from the date of this decree, shall make, execute, and deliver to the city a good and sufficient assignment and conveyance of said whole and complete waterworks plant mentioned in the first paragraph of this decree, acceptable to the city or approved by this court, and when such conveyance is accepted by the city, or approved by this court, the city shall become bound to pay to the said company the sum of two million seven hundred and fourteen thousand dollars ($2,714,000), being the fair and equitable value of said works in the manner following, that is to say: The city shall agree and assume to pay on the incumbrances and liens on said waterworks plant, to the holder or holders thereof, as their several rights and interests and priority thereto shall appear, an amount of said lien equal to said sum of two million seven hundred and fourteen thousand dollars ($2,714,000), and shall become bound to save said company harmless as to that amount of said lien. When said sale and transfer of said waterworks plant is made as provided in this paragraph, the liability of the city to pay therefor as herein provided shall relate back to the 30th day of April, 1894.

"Seventh. If the waterworks company shall fail to make and tender a sufficient conveyance of said whole and complete waterworks plant within said six months from the date of this decree, then the city shall not be required to pay the price fixed for the complete and whole plant; and the question whether the city shall pay, or is liable to pay, any sum whatever, for that part or fraction of the plant in Missouri which does not include the source of supply, is reserved.

"Eighth. That said city is not entitled to recover from said company any sum for or on account of any of the several claims for damages set up in its cross bill.

"Ninth. The said city shall pay to said company the contract price for hydrant rentals down to and including the 30th day of April, 1894, amounting, principal and interest, after deducting all payments made thereon, to the sum of one hundred and thirty-nine thousand four hundred and fifty-two dollars and eighty-two cents ($139,452.82), to be paid in the time and manner following, viz.: One-third of said sum shall be paid upon delivery by said company to the city of the possession of the whole and complete waterworks plant as required in the fourth paragraph of this decree, one-third when said company shall deliver to the city a sufficient conveyance or transfer of the whole and complete waterworks plant, and the remaining third six months thereafter; each of said installments to bear interest at 6 per centum per annum from April 30, 1894.

"Tenth. That said company shall have the right to collect and retain all water rentals which were due prior to the 30th day of April, 1894, and no claim therefor shall be made by the city against the company or the consumers; and the city shall collect and appropriate to its own use all water rentals which may accrue after the 30th day of April, 1894, and said company shall have no claim against the city or the consumers therefor.

"Eleventh. That, conformably to the consent expressed by counsel for both parties at the hearing, the property described in the pleadings as the 'Kaw Point Pumping Station,' and the six or ten acres of land, more or less, connected therewith, and now owned by said company, shall remain its property, and shall not be conveyed to said city as part of said waterworks plant. The value of said Kaw Point pumping station has been deducted from the price to be paid for the complete works.

"Twelfth. That each party shall pay one-half of the costs of these suits.

"Thirteenth. That this case is reserved for the purpose of making such other and further orders as may be found necessary to carry this decree into effect, and as may be equitable and just."

C. O. Tichenor, Gardiner Lathrop, and L. C. Krauthoff, for National Waterworks Company.

Frank Hagerman, John C. Gage, L. C. Slavens, R. W. Quarles, O. H. Dean, and F. F. Rozzelle, for Kansas City, Missouri.

Before BREWER, Circuit Justice, SANBORN, Circuit Judge, and THAYER, District Judge.

BREWER, Circuit Justice, stated the conclusions of the court as follows:

The urgency of the situation seems to forbid that this case should be retained by us for the length of time which would be required for the preparation of an opinion thoroughly and satisfactorily discussing all the difficult questions presented by counsel. All the time at our command we have given to an examination and consideration of the voluminous testimony, the elaborate briefs, and exhaustive arguments of counsel. We feel, therefore, that it is a duty to simply formulate briefly the conclusions to which we have arrived, and announce the decree which must be entered.

1. The act of 1873 provided "that at the expiration of the twenty years, if the grant be not renewed, the city shall purchase." The ordinance passed in pursuance of that act, and in effect the contract under which the works were created, provided that on a failure to renew the grant at the expiration of 20 years "the city shall then be required to purchase." There has been no renewal of the grant. The twenty years have elapsed. The imperative voice of the act and the ordinance is that the city "shall purchase." This is not an incidental, directory, or subordinate provision, but one mandatory, vital, and controlling. The thought of the legislature was that the city should own its waterworks; that, if any arrangement was made with a corporation for their construction and operation, the control and right of such company should be temporary, and the city should become, willingly or unwillingly, at a certain time the owner. The time fixed was at the expiration of 20 years, with a privilege of extension for another 20 years. This vital, mandatory, and controlling provision compels a decree that the company sell and the city buy. Such was the will of the legislature; such the terms of the act and the ordinance.

2. With reference to the matter of pleading, nearly two years before the expiration of the 20 years the company filed a bill alleging performance on its part of the terms of the contract, and also threatened action on the part of the city in violation of its obligations, and praying a decree that the contract "is a valid and subsisting contract, binding and obligatory upon your orator and the defendant, and that the defendant keep and abide by the same, and that, upon your orator's duly and faithfully doing and performing all things yet remaining to be done upon its part, the defendant, its officers and agents, keep and perform the covenants, promises, and agreements

on its part, so far as they are executory and unperformed, and that your orator may have such other and further relief as the case may require, and as may be conformable to equity, and to your honors may seem meet." At that time the obligation of the city to purchase had not yet arrived, but under such a bill a decree, after the lapse of 20 years, and when, there being no renewal of the term, the obligation of the city to purchase has arisen, may properly require the last act of compliance with the terms of that contract, to wit, purchase and payment by the city; so, notwithstanding the fact that the cross bill of the city, and the amendments thereto, may not be altogether harmonious, and might, if they stood as the only affirmative pleadings, be obnoxious to the criticisms of the counsel for the company, yet there is in the original bill, with its prayer, coupled with the changes of right brought by lapse of time, sufficient allegation and prayer upon which to rest a decree for the completion of the sale and purchase. It is true, and indeed confessed in the argument of counsel for the company, that it would now prefer not to sell, but to continue the franchise; but, nevertheless, it has for nearly three years placed itself before the court in the attitude of asking a decree for performance of this contract; and, never having dismissed its bill or withdrawn its prayer, it is now too late to say that the decree for sale and purchase is not responsive to the pleadings. If there were any formal defect,—any omission or addition of statement necessary to distinctly present the issues and uphold the decree,—an amendment would be permissible at the present time, and in the appellate court. Pleadings in equity cases may be conformed to the proofs; and we have the parties before us, the entire facts of the controversy, and the arrival of the time when a final determination of the rights between them is necessary. No technical defect in the pleadings should stay the hands of a court of equity.

3. We dissent in toto from the claim of the city that at the lapse of the 20 years the title to this property, with the right of possession, passed absolutely to it, without any payment or tender of payment, leaving only to the company the right to secure compensation by agreement or litigation, as best it could. Much was said in argument of the relative rights of lessor and lessee to buildings erected during the term of the lease. The city and the company were called licensor and licensee, and it was insisted that, as the right to operate was to cease at the expiration of 20 years, the relation was equivalent to that of lessor and lessee; that full title and right of possession passed instantly to the city, leaving all questions of amount and time and manner of payment to be subsequently determined. Much was said, too, about the rule of construction of public grants; that rule being that the grants are to be construed favorably to the public, and unfavorably to the grantee. It is unnecessary to attempt to define the peculiar quality of the title held by the company, nor do we question the rule of construction of public grants; but all contracts involving property rights and obligations between municipalities and individuals must be presumed to be based upon and to recognize the ordinary laws of business transactions, and, if any departure

therefrom is contemplated, such departure must be clearly manifested. Now, the familiar and ordinary law of business transactions is that he who parts with title receives, at the time, payment. In other words, payment of price and transfer of property are contemporaneous and concurrent acts. When it is affirmed that a contract made by a municipality contemplates that he whose money builds and constructs, and therefore establishes title to, property, shall surrender his title and possession without payment, or even the amount thereof determined, the language compelling such a construction must be clear and imperative. There is no such language in either the act or the ordinance. While it is true that the act provides that no grant so made shall confer the right to operate the waterworks for any period beyond 20 years, yet such provision is no more imperative than the one that at the expiration of the 20 years the city shall purchase and pay therefor. If the city fails to purchase and pay, it acquires no title, no right of possession, to the property of the water works. There is no language which would justify the court in saying that it is clearly expressed that the purpose of this contract and the thought of the legislature were to vest the title and right of possession in the city at the end of 20 years, leaving to future litigation the fixing of the amount and the enforcing of the fact of payment. If at the expiration of the 20 years the city had tendered to the company, in payment for the property, an amount admitted or found to be "the fair and equitable value," doubtless the right of the city to the possession and future earnings would have immediately accrued, and the present decree would have been based upon such transfer of right, but no such tender was made. In so far, therefore, as the decree of the circuit court attempted to transfer the title and the possession to the city before payment, we are constrained to hold that it was erroneous.

4. It is objected that the city, by virtue of the certain amendments to its charter and certain acts of the legislature, has become disabled from taking the title to all the property which makes up the waterworks system. This is a matter in respect to which the company need not concern itself. If it is paid the fair and equitable value of the property, as provided by the contract, then its rights have ceased, and the city can settle with other parties the matters of title and possession.

5. The difficult question, however, still remains; and that is, what is "the fair and equitable value" which, by the statute and the ordinance, the city is to pay for the waterworks? This amount was found by the circuit court to be $2,714,000. The company insists that the test is to take the income or earnings, and capitalize them. The earnings pay 6 per cent. on four millions and a half. In other words, the company has produced a property which earns 6 per cent. on four millions and a half; and that, it is claimed, is the fair valuation of the property, 6 per cent. being ordinary interest. On the other hand, the city insists that the franchise has ceased, and that basing the value upon earnings is in effect valuing a franchise which no longer exists, and which the city is not to pay for; that the true way is to take the value of the pipe, the machinery, and real

estate, put together into a waterworks system, as a complete structure, irrespective of any franchise,—irrespective of anything which the property earns, or may earn in the future. We are not satisfied that either method, by itself, will show that which, under all the circumstances, can be adjudged "the fair and equitable value." Capitalization of the earnings will not, because that implies a continuance of earnings, and a continuance of earnings rests upon a franchise to operate the waterworks. The original cost of the construction cannot control, for "original cost" and "present value" are not equivalent terms. Nor would the mere cost of reproducing the waterworks plant be a fair test, because that does not take into account the value which flows from the established connections between the pipes and the buildings of the city. It is obvious that the mere cost of purchasing the land, constructing the buildings, putting in the machinery, and laying the pipes in the streets—in other words, the cost of reproduction—does not give the value of the property as it is to-day. A completed system of water works, such as the company has, without a single connection between the pipes in the streets and the buildings of the city, would be a property of much less value than that system connected, as it is, with so many buildings, and earning, in consequence thereof, the money which it does earn. The fact that it is a system in operation, not only with a capacity to supply the city, but actually supplying many buildings in the city,—not only with a capacity to earn, but actually earning,—makes it true that "the fair and equitable value" is something in excess of the cost of reproduction. The fact that the company does not own the connections between the pipes in the streets and the buildings—such connections being the property of the individual property owners—does not militate against the proposition last stated, for who would care to buy, or at least give a large price for, a waterworks system without a single connection between the pipes in the streets and the buildings adjacent. Such a system would be a dead structure, rather than a living and going business. The additional value created by the fact of many connections with buildings, with actual supply and actual earnings, is not represented by the mere cost of making such connections. Such connections are not compulsory, but depend upon the will of the property owners, and are secured only by efforts on the part of the owners of the waterworks, and inducements held out therefor. The city, by this purchase, steps into possession of a waterworks plant,—not merely a completed system for bringing water to the city, and distributing it through pipes placed in the streets, but a system already earning a large income by virtue of having secured connections between the pipes in the streets and a multitude of private buildings. It steps into possession of a property which not only has the ability to earn, but is in fact earning. It should pay therefor not merely the value of a system which might be made to earn, but that of a system which does earn. Our effort has been to deduce from the volume of testimony that which, in this view of the situation, can be safely adjudged "the fair and equitable

value." The original cost of the works is not accurately and satisfactorily shown. If it would have assisted us in reaching a conclusion,—if, in consequence of our ignorance thereof, we have not placed the value upon this property which it deserves,—the company is alone to blame, for by the production of its books it could have clearly shown the actual cost of every part and of the whole of this property. There is a large amount of testimony as to the probable cost of reproducing the system, to which strenuous objection is made on the ground of an alleged temporary and extreme depression in the cost of labor and material. We have before us the estimate placed by two gentlemen of experience and capacity, appointed as commissioners, with direction to report "the fair and equitable value;" but neither by the order of the court appointing them, nor by their report, are we advised as to what they considered a criterion of the present "fair and equitable value." If they added anything beyond what in their judgment was the reasonable cost of reproduction, we are not advised as to how much they added, or what they took into consideration in making such addition. We have the fact of liens placed upon the property, to the extent of $3,000,000, with the qualified approval of the city officials. We have also the statement of the earnings, and the estimate of the value upon the basis of a capitalization of those earnings, amounting, as stated, at six per cent., to four and one-half millions. Rejecting the latter as too high, and the cost of reproduction as too low, and taking into consideration the entire history of the transactions between the company and the city, from its commencement to the present time, we have sought to place a value upon the property as it stands, with all the connections already made between the pipes and the private and public buildings, and with the work which it is in fact doing of supplying all these buildings with water, and receiving pay therefor. That valuation, after much discussion, comparison of figures, and readjustments, we have all agreed, is three millions of dollars; and in reaching this result we have excluded from our estimate the value of the Jarboe street reservoir property, which, as we understand the testimony, has heretofore been paid for by the city.

6. In its cross bill the city has made claim for damages, and insisted that the waterworks system does not come up, in efficiency and completeness, to the requirements of the contract. We agree with the circuit court, after reviewing carefully the testimony, that the city is not entitled to maintain this claim. It has for many years recognized and accepted this waterworks system as having been constructed in full compliance with the demands of the contract, and it is now too late to repudiate such recognition.

This is perhaps all that it is necessary for us to say. We have stated our conclusions, and outlined our reasons therefor. Further than that we are unable to go, without, as stated in the opening, taking more time than the circumstances will permit. In order to close as far as possible all disputed matters, we have prepared the form of a decree which is to be entered by the circuit court.

This case is accordingly remanded to the circuit court, with directions to vacate its former decree, and in lieu thereof to enter the following decree, to wit:

First. It is ordered, adjudged, decreed, and determined that under the act of the legislature of the state of Missouri of March 24, 1873, and the contract evidenced by Ordinance No. 10,524, between the National Waterworks Company, of New York, and the city of Kansas City, Missouri, which act and ordinance are referred to in the pleadings in this case, the said city is now legally bound to purchase from said company, and said company is legally bound to sell to the said city, the full, complete, and entire waterworks plant and appurtenances by which the said city and its inhabitants are now supplied with water, including therein that portion of said plant situated in the state of Kansas, and commonly known as the "Quindaro Supply Works," and the flow pipes leading therefrom, as well as that portion of said works which is situated in the state of Missouri, together with all lots of land, buildings, and reservoirs belonging to, or in any wise used as a part of, said plant, with the exception mentioned in the eleventh paragraph of this decree, and everything of every nature pertaining to said waterworks plant.

Second. That said city, under the said contract, is bound to pay for said complete waterworks plant aforesaid, and the said company is bound to receive in full payment therefor, "the fair and equitable value of the whole works," as provided in said contract evidenced by Ordinance No. 10,524.

Third. The court finds, adjudges, and decrees, that the fair and equitable value of said complete and whole waterworks plant, excluding the Jarboe street tract, which belongs to the city, is three million dollars, and that said city is legally obligated to pay that sum therefor.

Fourth. That said company is entitled to retain the possession, use, and control of the whole and complete waterworks system and plant aforesaid until final payment therefor shall be made by said city as hereinafter provided; and said city is hereby enjoined from interfering with such possession, use, or control until such payment is made; and said company, on its part, is hereby enjoined from refusing or neglecting to supply water to the city, and from refusing or neglecting to provide private consumers with water, as heretofore during such period.

Fifth. It is further ordered and decreed that on or before the 1st day of December, A. D. 1894, the said company shall cause to be executed, and shall deliver to the clerk of this court, who shall hold the same in escrow, good and sufficient deeds, assignments, releases, bills of sale, and other conveyances whereby the whole and complete waterworks system and plant aforesaid, including that portion thereof which is situated in the state of Kansas, may be transferred to said city free and clear of all burdens, obligations, liens, and incumbrances of every kind, save the lien created by the two mortgages executed by the waterworks company, respectively, on August 1, 1883, and June 1, 1885, each of which mortgages secures bonds of said company, said to be now outstanding in the sum of one million five hundred thousand dollars; that said deeds, releases, assignments, bills of sale, or other conveyances shall be retained by said clerk, but said clerk shall furnish full and complete copies of all such instruments to the city or its attorneys of record, for their inspection.

Sixth. It is further ordered and adjudged that after the execution and delivery to the clerk of the deeds, assignments, releases, and bills of sale aforesaid, the said city shall be entitled to thirty days in which to except to the sufficiency of such conveyances; and power is hereby reserved to hear and determine such exceptions, and to make all needful orders in relation thereto. When such deeds, assignments, releases, and bills of sale shall have been executed and filed as aforesaid, and after the approval thereof by the court, if the same shall be excepted to by the city, said city shall thereupon pay to the clerk of this court the said sum of three million dollars, being the fair and equitable value of said waterworks plant as heretofore assessed, or it shall cause the same to be so paid. Said payment shall be made to said

clerk for the benefit of whom it may concern, and power is hereby reserved to the court to détermine who are entitled to said fund after the same shall have been so paid into the court; and power is also reserved to permit any person or persons or corporation who may hereafter claim to have a legal or equitable lien upon said fund to intervene for the protection of his or their interest.

Seventh. It is further ordered and adjudged that upon payment being made by said city as aforesaid of said sum of three million dollars, and of the hydrant rentals mentioned in paragraph nine, said clerk shall deliver to said city or its authorized representatives all deeds, assignments, releases, bills of sale, and other muniments of title then held by him in escrow; and thereupon said city shall become vested with the title to said waterworks, and it shall forthwith be entitled to the exclusive possession, control, use, and enjoyment of said entire waterworks system and plant, and to all revenues, of whatsoever nature, thereafter resulting therefrom; and said waterworks company shall forthwith surrender the possession and control thereof to said city, and the interest of said company therein shall thenceforth cease and determine.

Eighth. It is further ordered, adjudged, and decreed that said city shall have the right to enter into any agreement which it may deem proper for the assumption, continuation of the lien, payment, or cancellation of any of the outstanding mortgage bonds, aggregating three million dollars, which are referred to in paragraph five of this decree, and that any arrangement which said city may so enter into with the owners and holders of said bonds, which shall result in the cancellation or payment of any thereof, or in the continuation of the lien, or in the assumption of any thereof by the city, and in the release of the waterworks company from its obligations thereon, shall operate pro tanto to discharge said city from its obligation to pay the three million dollars as provided in the sixth paragraph of this decree; and, for the purpose of enabling said city to avail itself of the provisions of this paragraph of the decree, power is hereby reserved to the court to ascertain hereafter to what extent, if any, said bonds have been canceled, paid, continued, assumed, or otherwise discharged by agreement between said bondholders and the city, and to make all needful orders in that behalf.

Ninth. It is further ordered, adjudged, and decreed that in addition to the value of said waterworks plant, fixed and to be paid as aforesaid, the said city shall also pay all unpaid hydrant rentals which accrued prior to November 15, 1893, and all subsequently accruing hydrant rentals, according to the rate heretofore fixed by agreement between said city and company until such time as the said city shall become entitled to the possession and use of said waterworks by virtue of compliance on its part with the previous provisions of this decree. Until the last-mentioned date, said waterworks company shall be entitled to all the earnings and revenues of said plant, whether derived from individual or public consumers; but said company, on its part, shall be compelled, during said period, to keep said waterworks plant in good repair, and shall also pay, as and when the same shall mature, the several interest installments that may accrue on the mortgage bonds mentioned in paragraph five of this decree. Said payment of hydrant rentals, as well as the assessed value of the works, shall be made before said city shall assume possession and control of said waterworks; and power is hereby reserved to the court to hereafter state an account, if necessary, for the sum due for hydrant rentals, and to make all needful orders necessary and proper to enforce this paragraph of the decree.

Tenth. It is further ordered, adjudged, and decreed that the city is not entitled to recover from said company any sum for or on account of any of the several claims for damages set up in its cross bill, and as to said claims for damages said cross bill is hereby dismissed.

Eleventh. That, conformably to the consent expressed by counsel for both parties at the hearing, the property described in the pleadings at "Kaw Point Pumping Station," and the six or ten acres of land, more or less, connected therewith, now owned by said company, shall remain its property, and shall

not be conveyed to said city as part of said waterworks plant. The value of said Kaw Point pumping station has been deducted from the price to be paid for the complete works.

Twelfth. It is further adjudged that each party shall pay one-half of the costs that have accrued in these suits up to the entry of this decree.

Thirteenth. That the court doth now reserve to itself the power to make any further order or orders that may hereafter be found necessary to carry this decree into full effect, and as may be deemed equitable and just.