# DESERET SAV. BANK v. FRANCIS et al., Commissioners of Ogden City.

No. 4002.   Decided August 11, 1923.   (217 Pac. 1114.)

1. STATUTES—THOUGH FORM OF STATUTE NOT CONTROLLING IN DE-
TERMINING IF MANDATORY, WORDS PRESUMED USED IN ORDINARY
SENSE; AND DIFFERENT INTERPRETATION MUST REST ON CHARAC-
TER OF LEGISLATION OR CONTEXT. Though the mere form of a
statute will not control in determining whether it is manda-
tory, the presumption is that words are used in their ordinary
sense, and if a different interpretation is sought it must rest
upon something in the character of the legislation or context.

2. MUNICIPAL CORPORATIONS—STATUTE REQUIRING CREATION OF
GUARANTEE FUND FOR LOCAL IMPROVEMENT WARRANTS HELD
MANDATORY. Laws 1921, c. 16, amending Comp. Laws 1917,
§ 748, and Laws of 1921, c. 9, § 1, which provide that city or
town which issues any special improvement bonds or warrants
shall create a fund to guarantee to the extent of such fund
the payments of principal and interest, is mandatory, and
does not give the municipality any discretion as to whether
such guarantee fund shall be created.

3. STATUTES—POWER TO PUBLIC OFFICERS GRANTED IN PERMISSIVE
LANGUAGE DEEMED MANDATORY, WHERE PUBLIC OR INDIVIDUAL
RIGHTS SO REQUIRE. Where power is given by statute to pub-
lic officers in permissive language, the language will be re-
garded as peremptory, where public interest or individual
rights so require.

4. MUNICIPAL CORPORATIONS—IT IS WITHIN LEGISLATIVE POWER TO
ENLARGE LIMITED MUNICIPAL LIABILITY ON LOCAL IMPROVEMENT
WARRANTS. Though a municipality's liability for payment of
warrants is, at the time of their issuance, special and limited,
it is within the power of the legislator to enlarge that lia-
bility.

Appeal from District Court, Second District, Weber Coun-
ty; *J. N. Kimball*, Judge.

Actions by the Deseret Savings Bank against Frank Fran-
cis and others, as commissioners of Ogden City, for a peremp-
tory writ of mandate. Judgment for plaintiff, and defend-
ants appeal.

AFFIRMED.

*Wade M. Johnson* and *S. C. Powell,* both of Ogden, for appellants.

*Van Cott, Riter & Farnsworth,* of Salt Lake City, for respondent.

CHERRY, J.

In the year 1920 the commissioners of Ogden City levied special local taxes on certain property in paving district No. 128 east, in Ogden City, to defray the expense of paving a roadway in the district, payable in ten equal annual installments. Thereafter, and under the authority of Comp. Laws Utah 1917, § 746, coupon warrants, drawn on the treasurer of the city and against the fund created by the special tax levy, were issued to the contractor in payment of the cost and expense of the improvement. A number of these warrants were transferred to the plaintiff, who presented them at maturity for payment, and payment was refused for the reason that there was no money available in the fund created by the special tax levy of the district against which the warrants were drawn. Plaintiff thereupon demanded that defendants create a special improvement guarantee fund, as provided by chapter 9 Laws Utah 1921, for the purpose of guaranteeing the payment of its warrants and upon defendants' refusal commenced this action in the district court of Weber county for a writ of mandate to require the defendants to comply with its request. Upon a stipulation of facts, the district court issued a peremptory writ of mandate, requiring the defendants to create the special improvement guarantee fund as prayed for, from which judgment the defendants have appealed to this court.

At the time of the issuance of the warrants, the funds available for their payment were limited to the special local taxes levied upon the property in the district, and the liability of the city for the payment of the same was defined by section 748, Comp. Laws Utah 1917, as follows:

"The city or town, as the case may be, shall not be held liable for the payment of any special tax warrant, except to the extent of the funds created and received by special tax levies or assessments; but the city or town shall be held responsible for faithful accounting, collection, settlements, and payments of the moneys of said funds, and when such accounting, collecting, settlements, and paying is faithfully performed, all further liability on the part of the city or town shall cease."

The coupon warrants issued were substantially equal in amount to the special taxes levied, so that, in case of delinquency or nonpayment of any of the taxes, there would be a default in the payment of the warrants to that extent.

After the plaintiff's warrants had been issued, the Legislature passed an act providing for a special improvement guarantee fund (chapter 9, Laws Utah 1921), the first section of which is as follows:

"Any city or town which has issued, or may hereafter issue, any special improvement bonds or warrants, shall by appropriation from the general fund or by the levy of a tax of not to exceed one mill in any one year, or by the issuance of general obligation bonds, or by appropration from such other sources as may be determined by the board of commissioners, or city council, or board of town trustees, as the case may be, create a fund for the purpose of guaranteeing, to the extent of such fund, the payment of bonds or warrants and interest thereon, issued against local improvement districts for the payment of local improvements therein. Such funds shall be designated as 'Special Improvement Guarantee Fund.' "

The same Legislature, by chapter 16, Laws Utah 1921, amended section 748, Comp. Laws Utah 1917, to read as follows:

"The city or town, as the case may be, shall not be held liable for the payment of any special tax bond or warrant, except to the extent of the funds created and received by special tax levies or assessments and to the extent of the special improvement guarantee fund of such city or town; but the city or town shall be held responsible for the lawful levy of all special taxes or assessments, for the creation and maintenance of the special improvement guarantee fund as provided by law, and for faithful accounting, collection, settlements and payments of the taxes levied for these purposes and the moneys of said funds."

As stated in appellants' brief—

"The question before the court in these proceedings is whether

or not the provisions of chapter 9, Laws of Utah 1921, are manda-
tory in so far as districts created prior to the passage of the act
are concerned."

The language of the statute is that—

"Any city * * * which has issued, or may hereafter issue,
any special improvement bonds or warrants, shall * * * create
a fund for the purpose of guaranteeing * * * the payment of
bonds or warrants," etc.

The words of the statute are imperative and mandatory,
and while the mere form of a statute does not control in this
respect (*Eccles Lbr. Co.* v. *Martin,* 31 Utah, 241, 87 Pac.
713) the presumption is that the words are used in
their ordinary sense, and if a different interpretation is        1
sought it must rest upon something in the character of
the legislation or in the context which will justify a different
meaning (25 A. & E. Enc. Law [2d Ed.] 633; *Board* v. *Peo-
ple's Nat. Bank,* 44 Ind. App. 578, 89 N. E. 904; *Ex parte
Jordan,* 94 U. S. 248, 24 L. Ed. 123; *Nat. Waterworks Co.* v.
*Kansas City,* 62 Fed. 853, 10 C. C. A. 653, 27 L. R. A. 827;
*Campbellsville Lbr. Co.* v. *Hubbert,* 112 Fed. 718, 50 C. C.
A. 435.

There is nothing in the purpose or policy of the legislation
nor in the context of the statute, which indicates that the city
should be invested with a discretion in the matter, but, on
the other hand, every consideration supports the view
that the Legislature intended to adopt a system, uni-        2
form in all cities, whereby the payment of such obliga-
tions would be guaranteed and the public credit maintained.
The amendment to section 748, Comp. Laws Utah 1917,
whereby the city is made responsible "for the creation and
maintenance of the special improvement guarantee fund as
provided by law," is inconsistent with the claim that the city
might in its discretion, refuse to create the fund.

· Upon other grounds the statute must be construed to be
mandatory. When power is given by statute to public offi-
cers, in permissive language, the language used will be re-
garded as peremptory where the public interest or
individual rights require that it should be. *Super-*        3
*visors* v. *U. S.,* 4 Wall. 435, 18 L. Ed. 419; *City of*

Mandamus

*Galena* v. *Amy*, 5 Wall. 705, 18 L. Ed. 560; *Village of Kent* v. *U. S.*, 113 Fed. 232, 51 C. C. A. 189; Sutherland Stat. Const. § 462; 4 Dillon Mun. Corp. (5th Ed.) § 1515.

In *Supervisors* v. *U. S.*, supra, Mr. Justice Swayne, speaking for the court, said:

"The conclusion to be deduced from the authorities is that, where power is given to public officers, in the language of the act before us, or in equivalent language—whenever the public interest or individual rights call for its exercise—the language * * * though permissive in form, is in fact peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given, not for their benefit, but for his. It is placed with the depositary to meet the demands of right, and to prevent a failure of justice. It is given as a remedy to those entitled to invoke its aid, and who would otherwise be remediless.

"In all such cases it is held that the intent * * * which is the test, was not to devolve a mere discretion, but to impose 'a positive and absolute duty.'"

By the terms of the statute the guarantee fund is provided for the payment of bonds and warrants issued and outstanding before, as well as those issued after, the passage of the act. Notwithstanding the liability of the city for the payment of plaintiff's warrants at the time of their issue was special and limited, it was within the lawful power of the Legislature to enlarge that liability. The cases are numerous where statutes creating liability upon transactions where no vested right or legal liability existed before,     4 have been sustained. In *N. Y. Life Ins. Co.* v. *Board of Commissioners*, 106 Fed. 123, 45 C. C. A. 233, the subject is elaborately discussed, and an exhaustive review of the cases made.

Appellants' counsel suggest that the creation of the guarantee fund referred to might involve a violation of article 14, §§ 3 and 4, of the Constitution, which limits the indebtedness of municipalities. A complete answer to that contention is that no such situation appears in this case, and besides the writ of mandate issued requires defendants to do such things only as are within their legal power.

It is the conclusion of this court that the provisions of chapter 9, Laws of Utah 1921, are mandatory, so far as the

creation of the special improvement guarantee fund therein described is concerned, and that it was intended to and does provide for the guaranteeing of warrants issued and outstanding at the time of the passage of the act.

Judgment affirmed.

WEBER, C. J., and THURMAN, FRICK, JJ., concur.

GIDEON, J., dissents.