In the Matter of the ADOPTION OF M.L.T., Jr., Minor Child.

No. 860335–CA.

Court of Appeals of Utah.

Dec. 10, 1987.

James D. Mickelson, Salt Lake City, for appellant.

David L. Wilkinson, State Atty. Gen., Diane Wilkins, Asst. Atty. Gen.

Before GARFF, JACKSON and ORME, JJ.

OPINION

GARFF, Judge:

This is an interlocutory appeal taken from an order denying appellant's motion to excuse an adopted child from appearing in court.

On March 14, 1986, the appellant, who was also the child's step-mother, filed a petition for adoption of the above-referenced child. The child had lived with the appellant and the father of the child for over nine years without knowledge that appellant was not the child's natural mother. On March 28, 1986, the natural mother appeared before the court and consented to the adoption. Appellant attempted to finalize the adoption without the child's presence, but was informed by the judge that the child's presence was required in court.

On April 24, 1986, appellant filed a motion to excuse the child from court, which requested the judge to interpret Utah Code Ann. § 78–30–8 (1977) to allow finalization of the adoption without the presence of the child in court.[1] The trial court denied appellant's motion.

This case presents an issue of first impression as to whether a child must appear and be examined in an adoption proceeding.

We affirm the district court ruling.

The appellant asserts that the word "must" in Utah Code Ann. § 78–30–8 is directory, rather than mandatory in nature, and, therefore, an appearance of the child at the adoption proceeding is not required.

1. Utah Code Ann. § 78–30–8 (1977): "The person adopting a child and the child adopted, and the other persons whose consent is necessary, must appear before the district court of the county where the person adopting resides, and the necessary consent must thereupon be signed and an agreement be executed by the person adopting to the effect that the child shall be adopted and treated in all respects as his own lawful child...."

Also, when it appears that it would be in the child's best interest not to appear, the district court judge should excuse the child from being present at the hearing. However, if the wording of Utah Code Ann. § 78–30–8 is in question, then the wording of Utah Code Ann. § 78–30–9 (1977) is also at issue [2] when it states:

> The court must examine all persons appearing before it pursuant to the preceding provisions, each separately, and, if satisfied that the interests of the child will be promoted by the adoption, it must make an order declaring that the child shall thenceforth be regarded and treated in all respects as the child of the person adopting.

The basic rule for statutory construction is that words used in statutes should be given their ordinary, plain meaning: "the presumption is that the words are used in their ordinary sense, and if a different interpretation is sought it must rest upon something in the character of the legislation or in the context which will justify a different meaning." *Deseret Sav. Bank v. Francis*, 62 Utah 85, 217 P. 1114, 1115 (1923). *See also Gord v. Salt Lake City*, 20 Utah 2d 138, 434 P.2d 449, 451 (1967).

 The purpose of the adoption statutes is to protect the rights of the parties involved and secure for the child a permanent, stable environment. This is a legitimate state and societal interest. To that end, the legislature crafted very carefully the language and the words it chose to reflect its intent. Further, "[a]doption proceedings are statutory in nature and we are not inclined to give the statute a meaning not intended by the Legislature." *In re Adoption of Jameson*, 20 Utah 2d 53, 432 P.2d 881, 882 (1967). The use of the word "must" is clearly mandatory.[3]

 Also, the Utah Supreme Court, in *Taylor v. Waddoups*, 121 Utah 279, 241 P.2d 157, 159 (1952), although primarily addressing the issue of relinquishment, makes no allowance for a selective appearance by the interested parties: "The adoptive parents, the child adopted, and the natural parents or persons whose consent is necessary, must appear before the district court where the consent must be signed, and the agreement executed that the child shall be treated as the lawful child of the adopted parents." We conclude that the appearance requirement of the person adopting the child, the child adopted, and the consenting parent must be strictly construed and is jurisdictionally required, and that, without compliance, the adoption could be nullified.

The appellant argues that the best interest of the child requires the absence of the child from the hearing, although no evidence was presented to substantiate that conclusion. It is for this precise reason the statute requires the appearance of the child, so the judge can not only be assured the child actually exists, but can also draw his or her own conclusion as to what the best interest of the child demands. Not to require the appearance of the child would, in a sense, be an abdication of the court's responsibility to ascertain the best interest of the child. The legislature obviously wanted that assessment to be made by the court, not by the adoptive parents.

> The state is interested in being assured that before a child, who is an innocent party, shall be adopted its interest and welfare must be safeguarded, and only after a district judge, set up by the statute to protect the child, has determined that the child's best interest will be assured, will an order be made.

---

**2.** The general rule is that all sections of a legislative enactment should be construed together. C. Sands, *Sutherland Statutory Construction* § 46.05 at 91 (4th ed. 1984), states: "the general purpose, intent or purport of the whole act shall control, and ... all the parts [should] be interpreted as subsidiary and harmonious. [sic] to its manifest object."

**3.** *See Grant v. Utah State Land Bd.*, 26 Utah 2d 100, 485 P.2d 1035, 1036–37 (1971), which states: "if the legislature had intended an applicant to have an absolute right of reinstatement, instead of saying that an applicant '*may* have his contract reinstated,' it could easily have used the word 'shall' or 'must,' and thus have rendered a mandatory meaning clear" (emphasis in original).

*Riding v. Riding,* 8 Utah 2d 136, 329 P.2d 878, 881 (1958).

However, we note that there is no legislative direction as to how or when the appearance is to be made, nor what should transpire at the hearing. Obviously, there are many variables that would influence the nature of the proceedings, such as the age and degree of understanding of the child, whether it was a step-parent adoption, as in the instant case, or an agency adoption or independent placement. It is left to the discretion of the court as to how fully aware the child must be regarding the nature and purpose of the hearing. It would also be advisable to consider most carefully the judgment and feelings of the adoptive parent(s), especially in a step-parent adoption where the child has resided with the adoptive parent for a number of years.

The ruling of the district court is affirmed and the matter is remanded for further proceedings consistent with this opinion.

ORME, Judge (concurring):

I concur fully in Judge Garff's opinion. I write separately to expand on the concern touched upon in the concluding paragraphs of that opinion.

At oral argument before this court, it became clear that appellant's motive in seeking to have the child excused from court attendance was concern by the adoptive mother, with whom the child had lived since infancy, and her husband, the child's biological father, that the child not be made aware at this time of the fact that "mom" was not in fact his biological mother. It was suggested that the trial court had perhaps not been sympathetic to this concern and, indeed, held the view that a child of nine years should be told the facts so as to understand the change in legal status which his adoption would bring about.

The statutes clearly require appearance of the child in court, Utah Code Ann. § 78–30–8 (1977), and also require the court to examine the child as part of its solemn obligation to determine whether the adoption would be in the child's best interest. *See* Utah Code Ann. § 78–30–9 (1977). It does not, however, follow that the child must receive full and complete disclosure, at the court's own instance, of the purpose of his attendance and the nature of the proceeding. In this case, it is the child's father and *de facto* mother who best know the child and his particular psychological and emotional needs. It is the court's business to view and question the child and decide whether adoption is best. However, in the case of children under the age of twelve,[1] it is not the court's business to handle such a private and potentially delicate matter in a way inconsistent with the wishes of the child's family.

Although conventional and perhaps even learned wisdom[2] holds that children should be told as soon as feasible that they were or are about to be adopted, decisions about the timing and extent of such disclosures are clearly ones for the family, and not the judicial system, to make.

So far as I am concerned, it would be an abuse of discretion for a trial court, in a case like the instant one, not to honor the family's request that the nature and effect of the proceeding be obscured from the child. As the main opinion ably demonstrates, the purpose of the statute is to assure the court an opportunity to see that the child exists, to observe his general health and well-being, to ascertain that he is free from obvious physical abuse, and to interrogate the child as appropriate. Those objectives can be as readily served in the context of a low-key, *in camera* chat with

---

1. Utah Code Ann. § 78–30–6 (1977) requires that children over the age of twelve years consent to their adoption. Obviously, such children must be told the facts, incident to giving their knowing and voluntary consent.

2. "Letting your child grow up with the knowledge that he or she is adopted is not only the most open approach but also the least complicated." J. McNamara, *The Adoption Adviser* 150 (1975). "There really isn't any need to labor the point that the adopted child must be told of his adoption as soon as he is old enough." L. Raymond, *Adoption and After,* 77 (1974).

"a nice person whom mommy and daddy know and who works down by the library" as in the formal and absolutely candid context which appellant fears.

JACKSON, J., concurs.