STATE ex rel. ROBINSON v. DURAND, Justice of the Peace.

No. 1886.   Decided April 14, 1908.   Petition for Rehearing Denied November 9, 1909 (104 Pac. 760).

1. JUSTICES OF THE PEACE—CHANGE OF PLACE OF TRIAL—DISMISSAL OF ACTION—STATUTORY REMEDIES. A defendant in justice's court who specially appears in the action and moves for a dismissal as provided by Rev. St. 1898, section 3724, as amended by Sess. Laws 1905, p. 9, c. 11, providing that, when on the special appearance of defendant it is found from the affidavits that the action is brought in the wrong county or precinct, the action may be dismissed, etc., cannot also move to change the place of trial as provided by section 3669 as amended by Sess. Laws 1905, p. 108, c. 92, authorizing a change of place of trial; the remedies being alternative. (Page 98.)

2. JUSTICES OF THE PEACE — DISMISSAL OF ACTION — AFFIDAVITS. Rev. St. 1898, section 3724, as amended by Sess. Laws 1905, p. 9, c. 11, authorizing the dismissal of an action in justice's court when on special appearance of defendant it is found from the affidavits that the action is brought in the wrong county or precinct, etc., contemplates that the parties may file affidavits, in support of and in opposition to the motion of dismissal, and that the court shall have jurisdiction to determine the facts, and the action of the court in denying the motion, though the affidavit of defendant is not controverted, even if error, is not in excess of jurisdiction. (Page 99.)

3. PROHIBITION—NATURE OF REMEDY. At common law the writ of prohibition prevents excess or usurpation of jurisdiction, and prohibition may not be resorted to when the ordinary remedies by appeal, writ of review, certiorari, or injunction, or other modes of review, are available. (Page 100.)

4. CONSTITUTIONAL LAW—JUDICIAL POWER. The power conferred on courts by Const., art. 8, sections 4, 7, giving the Supreme Court original jurisdiction to issue writs of mandamus, *certiorari*, prohibition, etc., and authorizing the district courts or any judge thereof to issue writs of *habeas corpus*, mandamus, prohibition, and other writs necessary to carry into effect their judgments, and to give them general control over inferior courts, cannot be enlarged or abridged by the legislature. (Page 100.)

5. CONSTITUTIONAL LAW—JUDICIAL POWER. The office of the writ of prohibition in Const., art. 8, sections 4, 7, authorizing the Supreme Court and the district courts or any judge thereof to issue the writ of prohibition, whether limited to the writ as known at common law or extended to the writ as defined by the territorial laws (Comp. Laws 1888, section 3743), providing that prohibition arrests the proceeding of any tribunal when such proceedings are without or in excess of the jurisdiction of the tribunal, cannot be enlarged or abriddged by the legislature, and the legislature cannot enlarge the functions of the writ and convert it into a mere writ of review.[1] (Page 102.)

6. CONSTITUTIONAL LAW—LEGISLATIVE POWER. The legislature, in exercising the power to provide a remedy to review the ruling of a justice's court other than on appeal, cannot encroach on the prerogatives of courts and cannot provide that the ruling shall be reviewed by the exercise of a prerogative writ, within Const., art. 8, sections 4, 7, authorizing the Supreme Court and the district courts to issue prerogative writs. (Page 105.)

7. CONSTITUTIONAL LAW—VALIDITY OF STATUTES. The court in determining the validity of Rev. St. 1898, section 3724, as amended by Sess. Laws 1905, p. 9, c. 11, providing that the ruling of a justice's court on motion to dismiss the action may be reviewed on appeal or by means of a writ of prohibition, cannot construe the act as though the legislature gave the mode of review a wrong name when it designated it "prohibition," where the proceeding under the act was in accordance with the practice applicable to prohibition. (Page 105.)

8. CONSTITUTIONAL LAW — ENCROACHMENT ON JUDICIAL POWER. Rev. St. 1898, section 3724, as amended by Sess. Laws 1905, p.

---

[1] People v. House, 4 Utah, 382, 10 Pac. 843; People v. Hills, 5 Utah, 413, 10 Pac. 407.

9, c. 11, providing that the ruling of a justice's court on mo-
tion to dismiss may be by appeal or by writ of prohibition,
makes the ruling reviewable by prohibition and does not create
a new writ and is void because it enlarges the office of the
writ of prohibition in Const., art. 8, sections 4, 7, authorizing
the Supreme Court and the district courts to issue the writ
of prohibition. (Page 106.)

9. PROHIBITION—REVIEW OF JUDICIAL PROCEEDINGS. The district
court in reviewing on prohibition a ruling of a justice's court
cannot try the matter *de novo*; but the inquiry must be confined
to a review of the proceedings before the justice. (Page 107.)

APPEAL from District Court, Third District; *Hon. M. L.
Ritchie,* Judge.

Application for a writ of prohibition by the State, on the
relation of R. J. Robinson, against Charles F. Durand, Jus-
tice of the Peace of Murray City, Salt Lake County.

Judgment for relator. Defendant appeals.

REVERSED, WITH DIRECTIONS.

*E. A. Walton* for appellant.

*S. P. Armstrong* for respondent.

STRAUP, J.

T. E. Laing commenced an action in the justice's court of
Murray precinct, Salt Lake County, against R. J. Robinson,
to recover a money judgment for sixteen dollars and seventy-
four cents alleged to be due on account of a subscription to
a certain newspaper, furnished the defendant in that ac-
tion. After issuance and service of summons from the jus-
tice's court, the defendant, on the 20th day of July, 1906,
specially appeared in that action and caused an affidavit of
his attorney to be filed, wherein it was deposed that the de-
fendant did not and never had resided in Murray precinct;
that he was a resident of Salt Lake City; that he did not re-
ceive the newspaper in Murray precinct, but in Salt Lake

City; and that he did not contract to pay for it or to perform the obligation sued on in Murray precinct, where the action was brought. Attached to the affidavit was a written motion for a dismissal of the action. The motion was made "upon the records and files of said cause and the foregoing affidavit." The motion was set for hearing on the 27th day of September and both parties notified. On that day the matter came on for hearing; the plaintiff appearing and resisting the motion, and the defendant failing to appear. The entry in the justice's docket recites:

"On motion of plaintiff's attorney the case was presented. The court being fully advised finds from the pleadings in the case (it being alleged in the complaint that the debt was contracted in the precinct where the action was brought) that the objections of the defendant to the jurisdiction of this court is not well taken and therefore overrules defendant's motion to dismiss."

The docket further recites that the defendant being duly served with summons and having failed to appear and answer, and the time to answer having expired, upon motion of plaintiff the default of the defendant was entered, that from the evidence it was found that the defendant was indebted to the plaintiff in the sum of nineteen dollars and two cents, and that thereupon judgment was entered for said amount and five dollars and twenty-five cents costs. In November following an execution was issued which was returned unsatisfied. Upon the filing of an affidavit for supplemental proceedings, an order was made requiring the defendant to appear, etc. He failed to do so. A warrant was issued, and thereupon the defendant applied to the district court for a writ of prohibition to arrest the action of the justice. On a hearing had before the district court, and upon "the testimony and proofs of the respective parties," the court found: That the defendant, when the action was commenced in the justice's court, was not a resident of, and at no time resided in, the precinct where the action was brought, nor did he contract to perform the obligation sued on in that precinct; that there was an acting justice of the

peace in the precinct where the defendant resided; that the matters stated in the affidavit filed by the defendant's attorney are and were true when the affidavit was filed; and that the facts therein stated were not disputed in the justice's court. As conclusions of law the court found that the suit in the justice's court was "brought in the wrong city or precinct, and that the said justice had no power, jurisdiction, or authority to make or enter said judgment against said defendant, plaintiff herein, and that the same is void," and thereupon granted a permanent writ of prohibition. From the judgment so entered Charles F. Durand, the justice of the peace, prosecuted this appeal.

The question to be decided involves the validity and construction of section 3724, Rev. St. 1898, as amended by chapter 11, p. 9, Sess. Laws 1905. It relates to the dismissal of actions in justices' courts without prejudice. Before the section was amended it provided that a judgment, that the action be dismissed without prejudice to a new action, might be entered: When the plaintiff voluntarily dismissed the action; when he failed to appear; when the complaint was not verified; and when the plaintiff failed to amend the complaint after a demurrer thereto had been sustained. The amendment added a new ground for a dismissal, which is:

"(5) When upon the special appearance of the defendant, it is found from affidavits filed by either party that the action is brought in the wrong county, precinct, or city; and if such objection is made by a party, specially appearing for the purpose, and overruled, then the ruling of the court upon such objection may be reviewed in the district court at the instance of the party aggrieved, either on appeal or by means of a writ of prohibition."

It is also suggested that section 3669 of the Revised Statutes of 1898, as amended by chapter 92, p. 108, Sess. Laws 1905, is also drawn in question. This section provides that the making and filing of an affidavit that the defendant did not reside, and that the obligation sued on was not to be performed, in the precinct where the action was brought, was

ground for a change of venue or place of trial. It further provides that the affidavit is conclusive as to the facts deposed, and that the jurisdiction of the justice over the action shall cease upon the filing of the affidavit for all purposes except to transfer the case. We think the provisions of section 3669, as amended, are not pertinent to the question involved. The defendant in the justice's court did not seek to have the place of trial changed and the case transferred, and in no manner invoked the aid of the provisions of that section. He specially appeared in the action and caused his attorney to file an affidavit and moved for a dismissal of the action as provided by section 3724. Assuming that the remedies are cumulative, as is argued by the respondent, and that defendant was entitled to invoke either, he nevertheless was not entitled to invoke the provisions of both sections at the same time; that is to say, the defendant in the justice's court was not entitled to have the venue or place of trial changed, as provided by section 3669, and at the time to have the action dismissed as provided by section 3724. As the defendant in that action proceeded under the provisions of section 3724, and moved for a dismissal of the action, and not for a change of place of trial, as provided by section 3669, we think that the provisions of the latter section are not drawn in question, and that the case must be controlled by the former.

The district court evidently assumed that when the affidavit of the defendant was filed, and the motion was made to dismiss the action, the justice was bound to grant it and was given no discretion in the matter. We do not so read the statute. It must be conceded that the justice's court had subject-matter jurisdiction, and that it also had acquired jurisdiction of the person of the defendant. Now section 3724, the section under which the defendant invoked the action of the justice's court, provides that an action may be dismissed without prejudice "when upon the special appearance of the defendant, it is found from affidavits filed by either party, that the action is brought in the wrong county, precinct or city." The statute contemplates that each party

may file affidavits; that is, one party may file an affidavit or affidavits in support of the motion, and the other against it. The facts deposed in the affidavit of one party may be controverted by the affidavit of the other party. When an affidavit or affidavits are filed and a motion is made to dismiss the action, the justice is required to rule on the motion. It is within his jurisdiction to decide the question, and it is his duty to determine the fact or facts as made evident by the affidavit or affidavits. But it may be said that the affidavit of the defendant in the justice's court was not controverted, and therefore the justice ought to have granted the motion. But such matter does not affect jurisdiction. It cannot be said that if the court correctly decides a question he is acting within his jurisdiction, but if he erroneously decides it and determines it contrary to the evidence he is acting without jurisdiction. If it should be said that the justice was here acting without jurisdiction because he decided the motion contrary to the facts, as made to appear by the affidavit, it could as well be said that a justice would be acting without jurisdiction if in the trial of a cause he should render a judgment in the very teeth of the evidence. We are therefore of the opinion that the ruling which the justice made did not affect his jurisdiction. If the ruling was made contrary to the facts as made to appear by the affidavit, it would only constitute error which was subject to correction on appeal, or, in the language of the statute, "by means of a writ of prohibition" at the instance of the party aggrieved. The fact that the ruling was made reviewable, we think, conclusively shows that it was not intended to be jurisdictional.

The question most troublesome is whether the ruling was reviewable on prohibition proceedings. We think the profession would generally concede that, unless the right to the writ of prohibition is conferred by section 3724, prohibition cannot be resorted to, and the office of the writ made to perform functions of a mere writ of review, as was here attempted. Such a proceeding is contrary to all our learning. It might as well be asserted that the action of the court in

attempting to enforce a judgment should be arrested by prohibition because a motion for a nonsuit made at the trial of the case ought to have been granted and the action dismissed. It, however, is manifest that the legislature intended to interfere with the well-established rule prevailing everywhere that prohibition cannot be resorted to when the usual and ordinary remedies provided by law, such as appeal, writ of review, *certiorari*, or other modes of review, or injunction, are available. That the legislature intended to make the writ of prohibition available to review the ruling in hand cannot well be doubted. The time-honored writ, the most extraordinary of all the writs, denominated the "writ of necessity," whose office, as we all understand, being to prevent excess or usurpation of jurisdiction, not to correct or annul proceedings already had, has been reduced to the level of a writ of most easy convenience to review mere error. We think the legislature, by the enactment of the section in question, plainly expressed such an intention. It certainly is novel legislation. With the wisdom of it we are not concerned. We are, however, unable to yield assent to the conclusion that it was within the province of the legislature to so modify and enlarge the office of the writ of prohibition. The Constitution of this state provides (article 8, section 4) that "the Supreme Court shall have original jurisdiction to issue writs of mandamus, *certiorari, prohibition, quo warranto, and habeas corpus.*" Section 7 of the same article provides that "the district courts or any judge thereof shall have power to issue writs of *habeas corpus,* mandamus, injunction, *quo warranto, certiorari,* prohibition and other writs necessary to carry into effect their orders, judgments and decrees, and to give them general control over inferior courts and tribunals within their respective jurisdictions." It must, of course, be conceded that whatever power was conferred upon the courts by the Constitution cannot be enlarged or abridged by the legislature.

When the Constitution conferred the power upon the courts to issue writs of prohibition, the question arises: What kind of writs of prohibition was meant? The Constitution of

California is quite similar to our Constitution. There the Constitution provided that the "Supreme Court should also have power to issue writs of mandamus, *certiorari,* prohibition, *habeas corpus* and other writs necessary or proper to a complete exercise of its appellate jurisdiction." An application was made to the Supreme Court to make the writ of prohibition available to arrest ministerial functions attempted to be exercised in excess of jurisdiction. The statute then in force in that state provided that: "The writ of prohibition is a counterpart of the writ of mandamus. It arrests the proceedings of any tribunal, corporation, board or person when such proceedings are without or in excess of jurisdiction of such tribunal, corporation, board or person." The Supreme Court held that at common law the writ of prohibition was an original remedial writ provided as a remedy for encroachments of jurisdiction; that its office was to restrain subordinate courts and inferior tribunals from exceeding their jurisdiction; that the writ mentioned in the Constitution was the writ of prohibition as known to the common law; and that the language of the statute did not require the court to hold that the office of the writ had been extended, or "that it should now issue in cases in which it could not have been resorted to prior to the statute." The writ was thereupon denied. (*Maurer v. Mitchell,* 53 Cal. 289.) The legislature of California then amended the statute so as to provide that the writ of prohibition could be resorted to to arrest the proceedings of any tribunal, etc., "whether exercising functions judicial or ministerial" without or in excess of jurisdiction. Again application was made to the Supreme Court for a writ of prohibition to arrest the exercise of ministerial functions without and in excess of jurisdiction. The statute as amended was pointed to and relied on to make the writ available in such case. The statute clearly made it applicable to that kind of a case, and it was so recognized by the court. The Supreme Court, however, affirmed the principles announced in the Maurer Case, and again held that the writ of prohibition mentioned in the Constitution was the writ of prohibition as known to the common law, and

further held that the legislature had no power to enact a statute which purported to enlarge the office of the writ of prohibition, and declared the enactment void in so far as the legislature attempted to do so. (*Camron v. Kenfield,* 57 Cal. 550.) The same principle was declared applicable to superior courts, and it was again held that the Constitution giving superior courts power to issue writs of prohibition meant writs of prohibition as known to the common law, and that it was not within the power of the legislature to enlarge the office of the writ. (*Farmers' Union v. Thresher,* 62 Cal. 407; *Hobart v. Tillson,* 66 Cal. 210, 5 Pac. 83. See, also, *State v. Hogan,* 24 Mont. 379, 62 Pac. 493, 51 L. R. A. 958.)

Now, if it is not within the power of the legislature to enlarge the office of the writ so as to extend it to arrest ministerial acts without or in excess of jurisdiction, we are unable to see how it is within the power of the legislature to extend the functions of the writ to proceedings which are not without or in excess of jurisdiction and which do not even involve jurisdiction, and to make it apply to proceedings wholly within the jurisdiction of the inferior court and to perform the functions of a mere writ of review. The common-law writ of prohibition was resorted to to restrain subordinate courts and inferior judicial tribunals—that is, tribunals, boards, etc., exercising what is termed judicial discretion or judgment as distinguished from mere ministerial functions—*from exceeding their jurisdiction.* If want or excess of jurisdiction was not involved, the writ could not be resorted to though the proceeding attempted to be restrained were judicial and not ministerial. To prevent usurpation of jurisdiction was the very essence of prohibition, and unless the proceedings involved threatened or attempted encroachment of jurisdiction the writ was not available. If, therefore, extending the writ to ministerial functions is an enlargement of its office and not within the power of the legislature, we cannot see why extending the writ to proceedings which are not without or in excess of jurisdiction, and made to perform the office not

to restrain usurpation of jurisdiction, but to review mere error, is not also an enlargement of its office, and likewise not within the power of the legislature. It is, however, suggested that the Constitution of this state and of California are dissimilar. We perceive no distinction in so far as any authority is conferred on the legislature to define or prescribe the office or scope of the writ of prohibition. The phrase in the Constitution that district courts shall have power to issue other writs necessary to give them a general control over inferior courts within their jurisdiction cannot be construed to mean that the legislature is authorized to enlarge or abridge the function of the writ of prohibition. We are, however, not required to go to the extent of the holding of the California courts that the writ of prohibition mentioned in the Constitution is the writ as known to the common law. We need but go to the extent, as was done by the court in the case of *Williams v. Lewis*, 6 Idaho, 184, 54 Pac. 619, and still the office of the writ as fixed and defined by the enactment in question is obnoxious to the writ of prohibition referred to in the Constitution. That court held:

"The framers of the Constitution of Idaho, in defining the functions of the writ of prohibition, did so with a full knowledge of the character and functions of the writ, as the same were defined in the statutes of Idaho, then existing, and which had been in force in the territory of Idaho for fifteen years at least prior to the adoption of the Constitution. While it is true there had been no conisderation of the question by the Supreme Court of the territory, we think it may reasonably be presumed that the members of the constitutional convention were as well advised as to the general legislation of the territory as they were to the decisions of its Supreme Court. The Constitution expressly continues in force all laws of the territory which are not repugnant to the Constitution. . . . As the law defining the functions of the writ of prohibition preceded the Constitution by some fifteen years, and such law was continued in force by express provision of the Constitution, we are, as expressed by the Supreme Court of California, 'forced to the conclusion' that, in providing for the issuance of the writ of prohibition in section 9 of article 5 of the Constitution, they intended the writ then existing under the laws of the territory, and with the functions therein declared and defined."

See, also, *Winsor v. Bridges,* 24 Wash. 540, 64 Pac. 780.

Assuming that the writ of prohibition mentioned in our Constitution is the writ as it existed under the laws of the Territory of Utah, with functions as therein defined and as applied by the courts of the territory when the Constitution was adopted, nevertheless, on an examination of the laws of the territory and of the decisions of the territorial courts, we do not find that any such a function was given to the writ of prohibition as is attempted by the enactment in question. Converting prohibition into a mode of review, and extending the office of the writ to proceedings not in excess of or without jurisdiction, is as repugnant to the laws of the territory and to the decisions of the territorial courts as to the common law itself. The laws of the territory provided that:

"The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board, or person, whether exercising functions judicial or ministerial when · such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person." Laws Utah 1884, p. 326; Comp. Laws 1888, section 3743."

While in the case of *People v. House,* 4 Utah 382, 10 Pac. 843, the territorial Supreme Court held that "at common law the writ of prohibition could not generally issue to arrest the doing of a merely ministerial act," yet in a subsequent case the same court held in the case of *People v. Hills,* 5 Utah 413, 16 Pac. 407, that "the remedy by writ of prohibition provided for by our statute (Laws 1884, pp. 326, 327) is the common-law writ recognized and regulated by statute."

Whether the writ, as defined by the territorial laws, should be regarded as the writ of prohibition known to the common law, or as an enlargement of that writ, need not now be determined. For, whichever view may be taken of the question, it is very manifest that the only office of the writ was to prevent usurpation of jurisdiction and to restrain acts in excess of or without jurisdiction, and not to

review proceedings and correct error, and that such an office was the only function which the territorial courts had ever given it. If therefore it is considered that the writ mentioned in the Constitution is the writ as it existed under the laws of the territory, with functions as declared by the territorial courts, and is the writ as we knew it, and as it was applied in the territory when the Constitution was adopted, still the office of the writ, as defined by the enactment, is clearly and unquestionably repugnant to the meaning of such a writ. The legislation in question not only enlarged the office of the writ, but completely changed its character and converted it into a mere writ of review. Giving the writ of prohibition such a function was unknown to the laws of the territory and to the practice of the territorial courts.

It may be suggested that it was competent for the legislature to provide some remedy to review the ruling of the justice other than on appeal. That is undoubtedly true; but in doing so the legislature must not break in upon the Constitution or encroach upon the prerogative of courts. The framers of the Constitution we think wisely and for a good purpose expressly conferred upon the courts and reserved unto them the power to issue the writs mentioned in the Constitution. If they had intended that the courts should have such power as may be prescribed by law, and to issue writs of prohibition as may be defined by the legislature, they would have said so. If it is within the power of the legislature to enlarge the office of the writ, it must also be within its power to abridge it. If such power to enlarge and abridge exists, then the power of courts to issue the writs, and the cases to which they may apply, are wholly dependent upon the will and discretion of the legislature. In such case the power of courts to issue the writs is as by statute provided, and not as provided by the Constitution. It may further be suggested that, since it was competent for the legislature to provide some mode to review the ruling other than on appeal, because the legislature has given the mode a wrong name and designated it "prohibition," we

should construe it as though it had properly designated it by some name known as a mode of review. There are two answers to such a contention: First, the application made to the district court was in fact for a writ of prohibition, and the action invoked was in accordance with the practice applicable to that kind of writs. Furthermore, in construing the enactment we do not see how we are authorized to strike out the word "prohibition" and insert something else and say that the legislature did not mean prohibition, but meant *certiorari,* or some other known mode of review. We are not willing to impute such ignorance to the legislature as would lead to the conclusion that they did not know the difference between prohibition and *certiorari* as a mode of review. We think the legislature meant just what is conveyed by the language employed, and that they intended to do just what was done, make the ruling reviewable "by means of a writ of prohibition." It may further be said that it was competent for the legislature to create new writs, and that such is the effect of the enactment. It may be conceded that it was within the power of the legislature to create new writs; but no new writ was created. We look in vain for the provisions or terms of a new writ, or for any procedure to invoke or enforce it. If we are authorized to say that a new writ was created because the legislature said the ruling may be reviewed "either on appeal or by means of a writ of prohibition," then why not also say a new appeal was created which must be prosecuted in accordance with the provisions of the enactment? The answer readily is: No such provisions were enacted, and that the appeal mentioned in the enactment refers to appeals taken from justice's courts to the district court as provided by the Code of Civil Procedure. Likewise the phrase "by means of a writ of prohibition" can only mean according to the procedure and practice applicable to writs of prohibition. The legislature did not create a new writ, but made the ruling reviewable by prohibition in accord- **8** ance with the practice and procedure applicable to such a proceeding, and thus created an entirely new and addi-

tional function of the writ of prohibition and gave it an office unknown to jurisprudence. We are of the opinion that the portion of the enactment extending and enlarging the office of the writ, as was here attempted, is void, and that the writ of prohibition was therefore not available.

Though it should be held that the ruling of the justice's court was reviewable on prohibition, nevertheless the judgment of the district court cannot be upheld. The district court did not merely review the ruling of the justice, with respect to his refusal to dismiss the action upon the showing made before him, but "upon the testimony and proofs of the respective parties" determined anew the facts set forth in the affidavits filed in the court below, and as conclusions of law found that the suit commenced in the justice's court was brought in the wrong precinct, and that therefore the justice was without jurisdiction. In other words, instead of reviewing the ruling of the justice court, the district court tried the matters *de novo*. Its inquiry ought to have been confined to a review of the proceedings before the justice, and not a trial of the matters as at large and anew, as was done.

For the reasons hereinbefore given, the judgment of the court below is reversed, and the cause remanded, with directions to the district court to dismiss it. Costs to appellant.

McCARTY, C. J., and FRICK, J., concur.