**Bryon D. PETERSEN, Petitioner and Appellant,**

v.

**UTAH BOARD OF PARDONS, Respondent and Appellee.**

No. 940178.

Supreme Court of Utah.

Nov. 3, 1995.

Bryon D. Petersen, Draper, pro se.

Jan Graham, Atty. Gen., Brent A. Burnett, Asst. Atty. Gen., Salt Lake City, for defendant.

STEWART, Associate Chief Justice:

Bryon D. Petersen seeks direct review in this Court of a Board of Pardons order revoking his parole. Not knowing what procedure is appropriate to obtain judicial review of the Board order, Petersen styles himself both a petitioner and an appellant.

The Board's parole revocation order resulted from the following facts. Petersen was initially sentenced in January 1982 to a prison term of five years to life for aggravated burglary and another term of not more than five years for aggravated assault. On February 9, 1988, he was placed on parole for a period of three years, and in June 1989, while on parole, he was arrested and charged with aggravated burglary, two counts of attempted criminal homicide, possession of a firearm by a restricted person, and violation of the habitual criminal statute. A Board of

Pardons information alleging that Petersen had violated the terms of his parole agreement was served on him on June 23, 1989.

On June 28, 1989, more than fourteen days after the Board issued the warrant, a prerevocation hearing was held; but because the prerevocation hearing was held after the Board's fourteen-day time limit, the hearing officer dismissed the information without prejudice. On June 28, 1989, the Board issued a second warrant, and on July 3, 1989, the Board served Petersen with another information, charging him with "having committed" the following parole violations and offenses: (1) attempted criminal homicide, (2) aggravated burglary, (3) being an habitual criminal, (4) possession of a firearm by a restricted person, and (5) use or possession of alcohol in violation of the parole agreement.

At the second prerevocation hearing, held on July 10, 1989, the hearing officer ruled that the allegations against Petersen were supported by probable cause. On September 20, 1989, less than ninety days from the date of Petersen's second prerevocation hearing, the Board commenced a parole violation hearing but then continued the hearing without date pursuant to rule 655–505–2 of the Utah Administrative Code pending the outcome of his trial on the criminal charges constituting the alleged parole violations. Petersen did not object to the continuance of the parole revocation proceedings.

In February 1990, the district court found Petersen guilty of aggravated burglary and attempted criminal homicide (two counts) and also found him to be an habitual criminal. On March 22, 1990, the Board filed an amended information charging parole violations based on the criminal convictions. The amended information inserted the language "having been convicted of" in front of "aggravated burglary, attempted murder (two counts), and habitual criminal" in place of the language "having committed" those offenses. The revocation hearing was held September 5, 1990, some two years and seven months after Petersen commenced his parole. Petersen pleaded "no contest" to the charges in the amended parole violation information. After informing Petersen that the Board con-

sidered a no-contest plea to be the same as a guilty plea, the Board accepted Petersen's plea, revoked his parole, and set a rehearing date for September 2000.

In the meantime, Petersen appealed the convictions, and on April 4, 1991, this Court reversed the convictions and dismissed the criminal charges with prejudice in *State v. Petersen*, 810 P.2d 421 (Utah 1991), on the ground that Petersen's trial was held more than 120 days after he had filed a demand for disposition of the charges against him. *Id.* at 428.

In light of that reversal, Petersen requested that the Board reconsider his plea of no contest. A new Board warrant was issued April 16, 1991, alleging that Petersen had violated his parole by committing the offenses of aggravated burglary, attempted homicide, and possession of a firearm by a restricted person. In this warrant, no reference was made to his subsequently reversed criminal convictions on those charges. Probable cause for these allegations had already been determined on July 10, 1989, prior to the initial parole revocation hearing. At a new parole revocation hearing held July 19, 1991, Petersen argued that his parole had terminated by operation of law on February 9, 1991, three years from the date on which he was originally paroled, and that the hearing was not timely in any event. The hearing was continued to allow the parties to brief the issues raised in Petersen's motion to dismiss the parole violation allegations. On October 21, 1991, the Board issued an interim decision taking the matter under advisement until consideration of the case by the full Board. On April 13, 1992, the Board issued a final order that denied Petersen's motion to dismiss and revoked his parole. The Board stated:

> At his 9/5/90 parole revocation hearing, Mr. Petersen challenged the grounds of his court conviction but did not challenge the legality of his parole conviction. In fact, he conceded through his voluntary plea of "no contest" that his parole had been violated. The three year clock towards statutory termination clearly came to a stop based on his parole being revoked by his own admission at that hearing. When the

court convictions were subsequently reversed, the Board determined that fairness dictated giving Mr. Petersen a new chance to refute the substantive allegations against him, i.e., aggravated burglary and attempted murder.

In this Court, Petersen alleges some seventeen errors, including numerous claims that the Board violated its own rules in a number of respects; but his brief states that he will "not attempt to deal with each and every question individually" and will argue essentially only three issues: (1) that the Board's revocation of his parole violated the ex post facto provisions of the state and federal constitutions because it was based on a statute enacted after he commenced parole; (2) that the revocation violated the due process clauses of those constitutions; and (3) that he was denied equal protection of the law. The essence of all three claims is that his parole was unlawfully terminated and that he is entitled to be discharged from prison.

■ Not knowing what procedure to invoke to obtain review of the Board's order revoking his parole, Petersen relies alternatively on (1) an appeal and (2) a writ of habeas corpus. Although the Board has not addressed the jurisdiction of the Court to hear this matter, subject matter jurisdiction is an issue that can and should be addressed sua sponte when jurisdiction is questionable. *Olson v. Salt Lake City Sch. Dist.*, 724 P.2d 960, 964 (Utah 1986); 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3536 (1984).

■ The first question is whether this Court has jurisdiction by way of an appeal. The answer is clear. Petersen has no right of appeal because the Legislature has specifically barred appeals from Board of Pardons orders. Utah Code Ann. § 77–27–5(3) states, "Decisions of the Board of Pardons and Parole in cases involving paroles, pardons, commutations or terminations of sentence, restitution, or remission of fines or forfeitures are final and are not subject to judicial review." That provision is dispositive as to the Court's appellate jurisdiction.

*See Foote v. Utah Bd. of Pardons,* 808 P.2d 734 (Utah 1991). We note that many of the issues Petersen raises, especially with respect to the Board's compliance with its rules, could be resolved only by way of an appeal from the Board's order, if an appeal were allowed. Those issues will not therefore be addressed.

■ The next question is whether this Court can address any of the issues Petersen raises on a petition for an extraordinary writ, given the Legislature's refusal to grant a right of appeal. Although the Legislature can refuse to provide a statutory appeal from orders of a governmental agency, the Legislature cannot curtail the constitutional powers of this Court to issue extraordinary writs in appropriate circumstances. Article VIII, section 3 of the Utah Constitution provides that the Supreme Court has "original jurisdiction to issue all extraordinary writs." The constitution does not define the term "extraordinary writs," but the meaning of the term can be ascertained in large measure from the history of Article VIII.

The term "extraordinary writs" first appeared in the Utah Constitution in the 1984 rewriting of Article VIII. As initially adopted in 1896, Article VIII, section 4 of the constitution referred to specific writs: "The Supreme Court shall have original jurisdiction to issue writs of *mandamus, certiorari,* prohibition, *quo warranto* and *habeas corpus.* In other cases, the Supreme Court shall have appellate jurisdiction only, and power to issue writs necessary and proper for the exercise of that jurisdiction." [1]

■ The term "extraordinary writs" that appears in the 1984 rewrite of Article VIII, section 3 was intended to include the specific writs mentioned in the original version of Article VIII, including "all writs necessary and proper for the exercise" of the Supreme Court's appellate function. Thus, the term "extraordinary writs" in Article VIII, section 3 includes the writs specifically mentioned in Article VIII, section 4 of the 1896 constitu-

tion, i.e., the prerogative writs of mandamus, certiorari, prohibition, quo warranto, and habeas corpus, and all writs necessary and proper for this Court's appellate jurisdiction.

■ Because this Court's writ powers are derived from the constitution, the Legislature cannot diminish them. As early as 1908, it was established that the Legislature had no power to restrict the writ powers. *State ex rel. Robinson v. Durand,* 36 Utah 93, 101–02, 104 P. 760, 763 (1908); *see also Foote v. Utah Bd. of Pardons,* 808 P.2d 734, 735 (Utah 1991). The extraordinary writs do not, however, authorize this Court to exercise the same scope of review as may be exercised pursuant to statutory appeals. *See Robinson,* 36 Utah at 104–05, 104 P. at 764.

■ Although Petersen is not properly before this Court on appeal, his papers do allege a claim cognizable pursuant to a petition for a writ of habeas corpus. The essence of Petersen's petition for an extraordinary writ is that the Board had no authority to revoke his parole and, therefore, the Board is unlawfully depriving him of his liberty. A challenge to the authority of a governmental agency or officer to restrain a person's liberty is classically raised by a petition for a writ of habeas corpus. *E.g., Hurst v. Cook,* 777 P.2d 1029, 1034 (Utah 1989); *Thompson v. Harris,* 106 Utah 32, 144 P.2d 761 (1943), *cert. denied,* 324 U.S. 845, 65 S.Ct. 676, 89 L.Ed. 1406 (1945); *Lee Lim v. Davis,* 75 Utah 245, 284 P. 323 (1929).

■ As noted, Petersen asserts a variety of errors with respect to the procedural regularity of the Board's proceedings. However, except to the extent that any particular allegation of error goes to the Board's authority to enter an order revoking Petersen's parole, the issues raised by Petersen are not reviewable by a petition for a writ of habeas corpus. *See Renn v. Utah Bd. of Pardons,* 904 P.2d 677 (1995); *Lancaster v. Utah Bd.*

---

1. Article VIII, section 7 of the 1896 constitution conferred even greater writ power on the district courts: "The district courts or any judge thereof, shall have power to issue writs of *habeas corpus, mandamus,* injunction, *quo warranto, certiorari,* prohibition and other writs necessary to carry into effect their orders, judgments, and decrees, and to give them a general control over inferior courts and tribunals within their respective jurisdictions."

*of Pardons,* 869 P.2d 945 (Utah 1994).[2]

■ The gravamen of Petersen's habeas claim is that the Board had no authority to revoke his parole after he had been, as he argues, "exonerated" of the criminal charges against him by this Court's reversal of his criminal convictions. Petersen bases his argument on Utah Code Ann. § 76–3–202(1) and (3),[3] which, at the relevant time, provided:

> (1) Every person who is committed to the state prison to serve an indeterminate term and who thereafter is released on parole *shall, upon completion of three years on parole without violation ... be terminated from his sentence....*
>
> ....
>
> (3) All time served on parole by *any person without violation shall constitute service of the total sentence....* Any time spent in confinement awaiting a hearing or decision concerning revocation of parole *shall* constitute service of the sentence *and, in the case of exoneration at such hearing or upon a decision rendered, the time spent shall be included in computing the total parole term.*

(Emphasis added.) Because this Court reversed Petersen's criminal convictions, which were the basis of his no-contest plea to the charges of parole violation, he argues that he was entitled to have the time he spent in confinement from the time of his arrest until this Court's reversal of his convictions on April 4, 1991, credited as time spent on parole under Utah Code Ann. § 76–3–202(3) so that his sentence terminated by operation of law under § 76–3–202(1) on February 9, 1991. Thus, in Petersen's view, the Board had no authority to enter its second order revoking his parole on April 13, 1992, which was more than four years after he commenced his parole and after his parole terminated, as he argues, by operation of law.

■ It is true that the Board does not have unlimited power to order one incarcerated for a parole violation after parole has been terminated. One purpose of the statutory scheme is to set a certain time after which a parolee is freed from the jurisdiction of the Board and allowed to resume a normal life. *Cf. State v. Green,* 757 P.2d 462 (Utah 1988). On the other hand, the statute allows the Board to retain jurisdiction over a parolee, notwithstanding the three-year termination period, if the parolee violates the terms of the parole within the three-year period and process is served on the parolee within that time. *Cf. Smith v. Cook,* 803 P.2d 788 (Utah 1990). If the Board could assert jurisdiction over a former parolee at any time after formal termination from parole because of a parole violation committed during the three-year parole period, a person whose sentence had been formally terminated could be subject to the Board's jurisdiction for an indefinite time, even for life, and be subject to reimprisonment, irrespective of how technical or insignificant the violation and even if the violation was not a criminal act. *See Green,* 757 P.2d at 464. In our view, the Legislature did not intend that a person whose sentence ended by termination of his parole should be indefinitely subject to the Board's jurisdiction, possibly for the remainder of his life.

*Smith v. Cook* addressed a similar issue in the context of the authority of a trial judge to revoke probation and order imprisonment after probation had expired. This Court held that a trial court did not have continuing power to reimprison a person after termination of probation for a probation violation. If, however, a notice of an order to show cause why probation should not be revoked was served within the probationary period, the court did retain jurisdiction over the probationer and could order reimprisonment for a probation violation even though the

---

**2.** A writ of habeas corpus may, of course, be used for purposes other than testing the authority of a governmental agency or officer to restrain the liberty of a person. It can also be used to challenge, for example, the terms and conditions of confinement; *Homer v. Morris,* 684 P.2d 64 (Utah 1984); *Wickham v. Fisher,* 629 P.2d 896 (Utah 1981); *Ziegler v. Miliken,* 583 P.2d 1175 (Utah 1978), or, in certain cases, to challenge the authority of a private person to restrain the liberty of another, *see* Utah R.Civ.P. 65B(C); *Taylor v. Waddoups,* 121 Utah 279, 286–87, 241 P.2d 157, 160–61 (1952); *Miller v. Brocksmith,* 825 P.2d 690, 695 (Utah Ct.App.1992).

**3.** See 1983 Laws of Utah, ch. 88, § 4.

statutory probationary period terminated prior to the adjudication of a violation. The rationale in *Smith* for reaching that result is equally persuasive here: "If probationers are given notice within the probation period, there is no danger of placing them 'in a state of perpetual limbo[, where] although their probation would appear to have terminated ... defendants would actually be subject to a continued term of fictional supervision.'" *Smith*, 803 P.2d at 795 (quoting *Green*, 757 P.2d at 464).

Clearly, the Board's first order revoking Petersen's parole was lawful. He was paroled February 9, 1988; he was arrested on a Board of Pardons warrant June 11, 1989; and the order revoking his parole was entered September 5, 1990, all within the three-year parole period.

Petersen's argument is that the reversal of his criminal conviction after the three-year period expired nullified the September 5, 1990, order revoking his parole pursuant to his plea of no contest. Petersen's theory is that the time he spent in confinement from June 6, 1989, when he was arrested until the end of the three-year period must be counted as time on parole without a violation within the meaning of Utah Code Ann. § 76–3–202(1) because he was "exonerated" of the criminal convictions by this Court's reversal of those convictions.

Petersen was not exonerated, however, by the reversal of his convictions. This Court reversed Petersen's criminal convictions on the procedural ground that his criminal trial was not held within the time required by law. The reversal did not undermine or in any way call into question the factual findings of his guilt.

■ It follows that the time he spent incarcerated awaiting a decision on his parole violation should not be "included in computing the parole term." *See* Utah Code Ann. § 76–3–202(3). It is true, as Petersen states, that after this Court reversed his convictions, the Board issued a second arrest warrant, charging that Petersen had in fact committed aggravated burglary and attempted murder and that the Board gave Petersen an opportunity to challenge those allegations on·their merits in a second parole revocation hearing,

all of which occurred after the three-year period. But those proceedings were in essence a continuation of the proceedings initiated before the expiration of the three-year period. The Board established its jurisdiction to revoke his parole before the three-year period terminated, and it retained jurisdiction after the three-year period to adjudicate the underlying charges against Petersen because he had not been exonerated. *See Smith v. Cook*, 803 P.2d 788 (Utah 1990).

■ In the first parole revocation proceeding, held within the three-year period, Petersen pleaded "no contest" to charges that he had been "convicted" of the crimes on which he was found guilty in the district court. A plea of "no contest" is tantamount to a guilty plea for every purpose including punishment. Although the plea did not technically go to the merits of the underlying criminal charges, but only to the fact that he had been "convicted" of those charges, that was clearly a sufficient basis for the Board's revocation of his parole.

■ Furthermore, neither collateral estoppel nor double jeopardy prevents the Board from finding a parole violation even if a parolee is acquitted in a criminal proceeding. *Johns v. Shulsen*, 717 P.2d 1336 (Utah 1986). A parole revocation proceeding is a civil proceeding that is entirely independent of any related criminal proceeding, even if the criminal charges are based on the same facts as those on which a charge of parole violation are based. *Johns v. Shulsen*, 717 P.2d 1336, 1338 (Utah 1986); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Different burdens of proof and different procedural rules apply. A reversal of a criminal conviction does not have the effect of reversing a parole revocation order based on the same facts. As stated in *Johns*, "[D]ismissal of criminal charges on procedural grounds does not suffice to establish that a board decision to revoke parole based on the same conduct lacks sufficient evidence to support it." *Johns*, 717 P.2d at 1337. The Board's power to adjudicate the merits of the parole violation charges was still intact even though exercised beyond the three-year parole peri-

od because the procedural defect in Petersen's convictions did not preclude the Board from ruling in the second parole revocation proceeding that Petersen had in fact committed the criminal offenses. The same result would follow, even if the reversal were based on insufficiency of the evidence. *Johns v. Shulsen,* 717 P.2d 1336 (Utah 1986).

Finally, Petersen argues that in revoking his parole, the Board violated the ex post facto provisions of the state and federal constitutions. The nature of his claim is not altogether clear, but it seems to be premised on the proposition that the Board had previously ruled that a reversal of a parolee's convictions of charges that were the basis of a parole revocation was an exoneration of the parole violations based thereon and that the Board's departure from that ruling in this case violates the ex post facto provisions.

The argument has no merit. First, the reversal in this case was based on procedural grounds only. Second, as to his complaint that the Board deprived him of the benefit of a prior Board ruling that time spent in prison on an alleged parole violation for which he was exonerated counted toward the completion of his parole, the argument has no foundation in law. Judicial decisions are not subject to the ex post facto prohibition. *Frank v. Mangum,* 237 U.S. 309, 344, 35 S.Ct. 582, 593–94, 59 L.Ed. 969 (1915); *Ross v. Oregon,* 227 U.S. 150, 161, 33 S.Ct. 220, 222, 57 L.Ed. 458 (1913).

On the above facts, Petersen's claims that he has been denied due process and equal protection of the law under the state and federal constitutions is frivolous.

The petition for a writ of habeas corpus is denied.

ZIMMERMAN, C.J., and HOWE, DURHAM and RUSSON, JJ., concur in STEWART, Associate C.J.'s opinion.